# 25-1665

**United States Court of Appeals**

**For the Second Circuit**

**Alan Kaufman, pro se**, Defendant–Appellant,

v.

**National Credit Union Administration Board**, as Liquidating Agent for Melrose Credit Union, Plaintiff–Appellee.

**On Appeal from the United States District Court for the Eastern District of New York** Case No. 1:23-cv-00123-NRM-TAM Hon. Nina R. Morrison, District Judge

**Appendix for Defendant–Appellant** Alan Kaufman, *pro se*

**Alan Kaufman, pro se**

175 High Pond Drive Jericho, NY 11753

(516) 941-8437

Date: October 29, 2025

RECEIVED
2025 NOV -4  AM 10: 30
CLERK'S OFFICE
U.S. COURT OF APPEALS

TABLE OF CONTENTS

1. District Court Docket Sheet......................................3

2. Report and Recommendations...............................16

3. Judgement.................................................64

4. Notice of Appeal.........................................69

5. Certificate of Service...................................70

<u>Query</u>   Reports   <u>Utilities</u>   Help   Log Out

APPEAL,ACO

# U.S. District Court
## Eastern District of New York (Brooklyn)
### CIVIL DOCKET FOR CASE #: 1:23-cv-01061-NRM-TAM

National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union v. Kaufman et al

Assigned to: Judge Nina R. Morrison

Referred to: Magistrate Judge Taryn A. Merkl

Cause: 28:1332 Diversity-Breach of Fiduciary Duty

Date Filed: 02/09/2023

Date Terminated: 06/13/2025

Jury Demand: Plaintiff

Nature of Suit: 190 Contract: Other

Jurisdiction: Diversity

**Plaintiff**

**National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union**

represented by **Joshua Cash**
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212-915-5812
Fax: 212-490-3038
Email: joshua.cash@wilsonelser.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Alan Kaufman**

represented by **Ariadne Anna Panagopoulou Alexandrou**
Lewis Brisbois Bisgaard & Smith LLP
77 Water Street
Suite 2100
New York, NY 10005
212-232-1300
Fax: 212-232-1399
Email:
Ariadne.Panagopoulou@lewisbrisbois.com
*ATTORNEY TO BE NOTICED*

**Carrie Cheryl Turner**
Levi & Korsinsky
33 Whitehall Street

Ste 17 Fl.
New York, NY 10004
617-515-1196
Email: carrie.turner@lewisbrisbois.com
*ATTORNEY TO BE NOTICED*

**Peter T. Shapiro**
Lewis Brisbois Bisgaard & Smith LLP
77 Water Street
Suite 2100
New York, NY 10005
212-232-1322
Fax: 212-232-1399
Email: Peter.Shapiro@lewisbrisbois.com
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **Mitchell Reiver**<br>*TERMINATED: 01/19/2024* | represented by | **Peter Jakab**<br>Fein & Jakab<br>40 Fulton Street<br>17th Floor<br>New York, NY 10038<br>212-732-9290<br>Email: pjakab@earthlink.net<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Counter Claimant**

| | | |
|---|---|---|
| **Mitchell Reiver**<br>*TERMINATED: 01/19/2024* | represented by | **Peter Jakab**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

V.

**Counter Defendant**

| | | |
|---|---|---|
| **National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union** | represented by | **Joshua Cash**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Docket Text |
|---|---|---|
| 02/09/2023 | 1 | COMPLAINT against All Defendants filing fee $ 402, receipt number ANYEDC-16391882 Was the Disclosure Statement on Civil Cover Sheet completed -NO,, filed by National Credit Union Administration Board, |

| | | |
|---|---|---|
| | | as Liquidating Agent for Melrose Credit Union. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons) (Cash, Joshua) (Entered: 02/09/2023) |
| 02/15/2023 | | Case Assigned to Judge Nina R. Morrison and Magistrate Judge Taryn A. Merkl. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (SR) (Entered: 02/15/2023) |
| 02/15/2023 | 2 | Summons Issued as to All Defendants. (SR) (Entered: 02/15/2023) |
| 02/15/2023 | 3 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if** all parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences.** Do NOT return or file the consent unless all parties have signed the consent. (SR) (Entered: 02/15/2023) |
| 02/15/2023 | 4 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (SR) (Entered: 02/15/2023) |
| 03/09/2023 | 5 | SUMMONS Returned Executed by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union. Alan Kaufman served on 3/8/2023, answer due 3/29/2023. (Cash, Joshua) (Entered: 03/09/2023) |
| 03/09/2023 | 6 | SUMMONS Returned Executed by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union. Mitchell Reiver served on 2/16/2023, answer due 3/9/2023. (Cash, Joshua) (Entered: 03/09/2023) |
| 03/22/2023 | 7 | NOTICE of Appearance by Peter T. Shapiro on behalf of Alan Kaufman (aty to be noticed) (Shapiro, Peter) (Entered: 03/22/2023) |
| 03/22/2023 | 8 | MOTION for Extension of Time to File Answer by Alan Kaufman. (Shapiro, Peter) (Entered: 03/22/2023) |
| 03/23/2023 | | ORDER: Motion for Extension of Time to File Answer ( 8 ) is granted, on consent. Defendant Alan Kaufman shall move, answer, or otherwise respond to the Complaint by **4/21/2023**. So Ordered by Magistrate Judge Taryn A. Merkl on 3/23/2023. (JF) (Entered: 03/23/2023) |

| 04/10/2023 | 9 | NOTICE of Appearance by Peter Jakab on behalf of Mitchell Reiver (aty to be noticed) (Jakab, Peter) (Entered: 04/10/2023) |
| --- | --- | --- |
| 04/10/2023 | 10 | Consent MOTION for Extension of Time to File Response/Reply *to Complaint* by Mitchell Reiver. (Jakab, Peter) (Entered: 04/10/2023) |
| 04/11/2023 | | ORDER: Consent Motion for Extension of Time to File ( 10 ) is granted, on consent. Defendant Mitchell Reiver shall answer, move, or otherwise respond to the complaint by **4/14/2023**. So Ordered by Magistrate Judge Taryn A. Merkl on 4/11/2023. (JF) (Entered: 04/11/2023) |
| 04/11/2023 | 11 | NOTICE of Appearance by Carrie Cheryl Turner on behalf of Alan Kaufman (aty to be noticed) (Turner, Carrie) (Entered: 04/11/2023) |
| 04/14/2023 | 12 | Consent MOTION for Extension of Time to File Response/Reply as to 1 Complaint, by Mitchell Reiver. (Jakab, Peter) (Entered: 04/14/2023) |
| 04/17/2023 | | ORDER: Motion for Extension of Time 12 is granted, on consent. Defendant Mitchell Reiver shall answer, move, or otherwise respond to the complaint by **4/21/2023**. So Ordered by Magistrate Judge Taryn A. Merkl on 4/17/2023. (JF) (Entered: 04/17/2023) |
| 04/21/2023 | 13 | Letter MOTION for pre motion conference by Mitchell Reiver. (Jakab, Peter) (Entered: 04/21/2023) |
| 04/21/2023 | 14 | Letter MOTION for pre motion conference by Alan Kaufman. (Shapiro, Peter) (Entered: 04/21/2023) |
| 04/28/2023 | 15 | RESPONSE in Opposition re 14 Letter MOTION for pre motion conference , 13 Letter MOTION for pre motion conference *Combined Response to Kaufman and Reiver* filed by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union. (Cash, Joshua) (Entered: 04/28/2023) |
| 05/15/2023 | | ORDER granting Defendants' 13 14 Motions for Pre Motion Conferences. A video pre-motion conference is scheduled for June 2, 2023 at 11:30 AM, at which time the parties should be prepared to address Defendants' anticipated motions to dismiss. The parties will receive access information by email in advance of the conference.<br><br>The parties are advised that, pursuant to Judge Morrison's Individual Rule 5.1.4, in appropriate cases, the pre-motion letters as well as the response, along with counsel's arguments at the pre-motion conference, may be construed at the discretion of the Court as the motion itself. Ordered by Judge Nina R. Morrison on 5/15/2023. (LK) (Entered: 05/15/2023) |
| 06/02/2023 | | MINUTE ENTRY and ORDER: A video pre-motion conference was held before Judge Nina R. Morrison on June 2, 2023. Joshua Cash and Mark Ledwin appeared on behalf of Plaintiff NCUAB. Peter Shapiro and Carrie Turner appeared on behalf of Defendant Kaufman. Peter Jakab |

| | | |
|---|---|---|
| | | appeared on behalf of Defendant Reiver. Case called. Discussion held on Defendants' anticipated motions to dismiss. Defendant Kaufman's request to file a motion to dismiss all claims against him based on the previous criminal restitution order against him is deemed withdrawn without prejudice to renew. Defendant Kaufman withdrew his motion to dismiss the sixth cause of action as untimely. For the reasons stated on the record, the Court expressed its inclination to construe both defendants' 12(b)(7) motions as made and deny for failure to demonstrate that Mass. Mutual is an indispensable party, but granted Defendants leave to submit additional arguments. Defendants may submit additional briefing on this motion, or advise the Court if they do not have additional arguments to raise, by June 12, 2023. The Court may then in its discretion request additional briefing from Plaintiff. Ordered by Judge Nina R. Morrison on 6/2/2023. (FTR Log #1:44-51:57.) (LK) (Entered: 06/02/2023) |
| 06/12/2023 | 16 | MOTION to Dismiss by Mitchell Reiver. (Attachments: # 1 Declaration of Mitchell Reiver, # 2 Exhibit A, # 3 Exhibit B) (Jakab, Peter) (Entered: 06/12/2023) |
| 06/12/2023 | 17 | MOTION to Dismiss by Alan Kaufman. (Turner, Carrie) (Entered: 06/12/2023) |
| 06/15/2023 | | ORDER: Plaintiff shall file a response to Defendants' 16 , 17 submissions by letter on or before June 26, 2023. Ordered by Judge Nina R. Morrison on 6/15/2023. (LK) (Entered: 06/15/2023) |
| 06/26/2023 | 18 | RESPONSE in Opposition re 17 MOTION to Dismiss , 16 MOTION to Dismiss filed by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union. (Cash, Joshua) (Entered: 06/26/2023) |
| 06/26/2023 | 19 | MOTION for Leave to File Document *Reply Letter Brief* by Mitchell Reiver. (Jakab, Peter) (Entered: 06/26/2023) |
| 06/27/2023 | | ORDER granting 19 Motion for Leave to File. Defendant Reiver may file a reply submission of not more than two pages by Friday, June 30. Ordered by Judge Nina R. Morrison on 6/27/2023. (LK) (Entered: 06/27/2023) |
| 06/30/2023 | 20 | REPLY to Response to Motion re 16 MOTION to Dismiss filed by Mitchell Reiver. (Jakab, Peter) (Entered: 06/30/2023) |
| 07/13/2023 | | ORDER: At the 6/2/2023 pre-motion conference, the Court explained on the record its inclination to deny the Defendants' anticipated motions to dismiss the sixth cause of action in the Complaint, but invited the parties to submit supplemental briefing. The Court has considered the parties' supplemental submissions. For the reasons stated on the record at the 6/2/2023 pre-motion conference, the Defendants' 16 , 17 Motions to Dismiss the sixth cause of action in the Complaint for unjust enrichment |

| | | |
|---|---|---|
| | | under Fed. R. Civ. P. 12(b)(7) are DENIED. Ordered by Judge Nina R. Morrison on 7/13/2023. (LK) (Entered: 07/13/2023) |
| 07/28/2023 | 21 | ANSWER to 1 Complaint, by Alan Kaufman. (Shapiro, Peter) (Entered: 07/28/2023) |
| 07/31/2023 | 22 | ANSWER to 1 Complaint, , COUNTERCLAIM against National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union by Mitchell Reiver. (Attachments: # 1 Exhibit A Split Dollar Insurance Agreement, # 2 Exhibit B Life Insurance Policy) (Jakab, Peter) (Entered: 07/31/2023) |
| 08/02/2023 | 23 | SCHEDULING ORDER: A telephonic Initial Conference will be held on **9/18/2023 at 10:30 a.m.** before Magistrate Judge Taryn A. Merkl. The parties are directed to call the toll-free number **(877) 336-1839**. The access code is **3914302**. The parties shall dial in five (5) minutes before the scheduled conference. Counsel are directed to complete the attached Case Management Worksheet and electronically file same with the Court no later than **9/11/2023**. Should the parties wish to adopt a plan for discovery different from the structure in the worksheet, they may do so only if they file a letter explaining why such a plan is appropriate in this case. Ordered by Magistrate Judge Taryn A. Merkl on 8/2/2023. (KC) (Entered: 08/02/2023) |
| 08/14/2023 | | RESCHEDULING ORDER: The telephonic Initial Conference scheduled for 9/18/2023 at 10:30 a.m. is being adjourned by the Court due to a conflict in the Court's calendar. A telephonic Initial Conference will be held on **9/20/2023 at 10:30 a.m.** before Magistrate Judge Taryn A. Merkl. The parties are directed to call the toll free number **(877) 336-1839**. The access code is **3914302**. The parties shall dial in five (5) minutes before the scheduled conference. Counsel are directed to complete the Case Management Worksheet, attached to the 8/2/2023 Scheduling Order 23 , and electronically file same with the Court no later than **9/13/2023**. Should the parties wish to adopt a plan for discovery different from the structure in the worksheet, they may do so only if they file a letter explaining why such a plan is appropriate in this case. Ordered by Magistrate Judge Taryn A. Merkl on 8/14/2023. (KC) (Entered: 08/14/2023) |
| 08/15/2023 | 24 | Letter MOTION to Adjourn Conference by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union. (Cash, Joshua) (Entered: 08/15/2023) |
| 08/15/2023 | 25 | Letter MOTION for Extension of Time to File Response/Reply *to Reiver's Counterclaim* by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union. (Cash, Joshua) (Entered: 08/15/2023) |
| 08/17/2023 | | ORDER granting 25 Motion for Extension of Time to File. Plaintiff NCUAB's deadline to respond to Defendant Reiver's counterclaim is |

| | | |
|---|---|---|
| | | extended to September 20, 2023. Ordered by Judge Nina R. Morrison on 8/17/2023. (LK) (Entered: 08/17/2023) |
| 08/17/2023 | | ORDER: Motion to Adjourn 24 is granted, on consent, in light of the parties' efforts to continue their productive settlement negotiations. The telephonic initial conference scheduled for 9/20/2023 at 10:30 a.m. is adjourned. A telephonic Initial Conference will be held on **10/30/2023 at 10:30 a.m.** before Magistrate Judge Taryn A. Merkl. The parties are directed to call the toll free number **(877) 336-1839**. The access code is **3914302**. The parties shall dial in five (5) minutes before the scheduled conference. Counsel are directed to complete the Case Management Worksheet, attached to the 8/2/2023 Scheduling Order 23 , and electronically file same with the Court no later than **10/23/2023**. Should the parties wish to adopt a plan for discovery different from the structure in the worksheet, they may do so only if they file a letter explaining why such a plan is appropriate in this case. Ordered by Magistrate Judge Taryn A. Merkl on 8/17/2023. (KC) (Entered: 08/17/2023) |
| 09/15/2023 | 26 | Letter MOTION for Extension of Time to File Response/Reply *to Reiver's Counterclaim* by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union. (Cash, Joshua) (Entered: 09/15/2023) |
| 09/18/2023 | | ORDER: Motion for Extension of Time to File Response/Reply (ECF No. 26 ) is granted, on consent, in light of the parties' productive settlement negotiations. Plaintiff shall respond to Defendant's counterclaim (ECF No. 22 ) by **10/30/2023**. So Ordered by Magistrate Judge Taryn A. Merkl on 9/18/2023. (JF) (Entered: 09/18/2023) |
| 10/19/2023 | 27 | CASE MANAGEMENT STATEMENT / *Worksheet* (Cash, Joshua) (Entered: 10/19/2023) |
| 10/30/2023 | | Minute Entry and Order: A telephonic Initial Conference was held on 10/30/2023 before Magistrate Judge Taryn A. Merkl. Appearances by Joshua Cash for plaintiff; Peter T. Shapiro for defendant Alan Kaufman and Peter Jakab for Defendant Mitchell Reiver. The parties note that Plaintiff and Defendant Mitchell Reiver anticipate filing a stipulation of dismissal with prejudice as to those parties only by **1/12/2024**. Accordingly, and as noted on the record, Plaintiff's deadline to answer Defendant Reiver's counterclaims is extended to **1/12/2024**, in an abundance of caution. The parties confirmed that they held their Rule 26(f) conference. As stated on the record, the parties' discovery plan is adopted, in part, as follows, as between Plaintiff and Defendant Alan Kaufman. The parties' proposed confidentiality order shall be filed on ECF by **11/13/2023**.Rule 26(a) initial disclosures shall be exchanged by **11/17/2023**. First requests for documents and interrogatories shall be exchanged by **11/17/2023**.Phase I discovery shall be completed by **2/2/2024**. The deadline for joining additional parties and amending the pleadings as of right is **3/1/2024**. Fact discovery shall be completed on or |

| | | |
|---|---|---|
| | | before **3/29/2024**. The parties are directed to file a joint status report certifying the close of fact discovery by **4/5/2024**. Exchange of expert disclosures shall be completed by **5/10/2024**. Expert depositions shall be completed by **6/10/2024**. Exchange of rebuttal expert reports shall be completed by **7/15/2024**. All expert discovery shall be completed by **8/15/2024**, and the deadline to complete all discovery is **9/6/2024**. Certification of the completion of all discovery shall be filed on ECF by **9/13/2024**. The last date to take the first step in dispositive motion practice is **10/15/2024**, and must be done in accordance with the Individual Rules of the assigned District Judge.<br><br>A telephonic Status Conference will be held on **2/15/2024 at 10:00am** before Magistrate Judge Taryn A. Merkl. Counsel are directed to call the toll-free number **(877) 336-1839**. The access code is **3914302**. Counsel shall dial in five (5) minutes before the scheduled conference. Ordered by Magistrate Judge Taryn A. Merkl on 10/30/2023. (AT&T Log #10:32-11:09.) (ALG) (Entered: 10/30/2023) |
| 11/07/2023 | 28 | Proposed Pretrial Order *Proposed Confidentiality Order* by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union (Cash, Joshua) (Entered: 11/07/2023) |
| 11/08/2023 | 29 | ORDER: The parties Proposed Confidentiality Order ( 28 ) is granted, on consent. Attached to this Order is a signed copy of the Confidentiality Order. Ordered by Magistrate Judge Taryn A. Merkl on 11/8/2023. (ALG) (Entered: 11/08/2023) |
| 01/09/2024 | 30 | STIPULATION of Dismissal *with Prejudice as to Mitchell Reiver* by Mitchell Reiver (Jakab, Peter) (Entered: 01/09/2024) |
| 01/11/2024 | | ORDER: The Court is in receipt of the 30 Stipulation of Dismissal. The Court does not construe the Stipulation as discontinuing Mitchell Reiver's counterclaim. If the parties intended to discontinue Reiver's counterclaim, they are directed to file a revised Stipulation of Dismissal to that effect by January 19, 2024. Ordered by Judge Nina R. Morrison on 1/11/2024. (AD) (Entered: 01/11/2024) |
| 01/12/2024 | 31 | Proposed Pretrial Order *Proposed 502(d) Order - Request to be So-Ordered* by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union (Cash, Joshua) (Entered: 01/12/2024) |
| 01/17/2024 | 32 | STIPULATION of Dismissal *with Prejudice* by Mitchell Reiver (Jakab, Peter) (Entered: 01/17/2024) |
| 01/17/2024 | | ORDER: The parties' proposed 502(d) order so ordered; see attached. So Ordered by by Magistrate Judge Taryn A. Merkl on 1/17/2024. (ALG) (Entered: 01/17/2024) |

| 01/19/2024 | | Order Dismissing Parties: The 32 Stipulation of Dismissal is So Ordered. Party Mitchell Reiver terminated.Ordered by Judge Nina R. Morrison on 1/19/2024. (AD) (Entered: 01/19/2024) |
|---|---|---|
| 02/01/2024 | 33 | Letter MOTION for Summary Judgment *Request for Pre-Motion Conference* by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union. (Attachments: # 1 Rule 56.1 Statement, # 2 Declaration, # 3 Exhibit Exh. A - Alan Kaufman Transcript, # 4 Exhibit Exh. B - 2008 Melrose Handbook, # 5 Exhibit Exh. C - Bribery Policy, # 6 Exhibit Exh. D - Kaufman Indictment, # 7 Exhibit Exh. E - Jury Instructions, # 8 Exhibit Exh. F - Verdict Form, # 9 Exhibit Exh. G - Restitution Order, # 10 Exhibit Exh. H - Melrose Ledger, # 11 Exhibit Exh. I - Letter to DIFS, # 12 Exhibit Exh. J - Dechert Termination Letter, # 13 Exhibit Exh. K - Super Bowl Email, # 14 Exhibit Exh. L - Super Bowl Emails, # 15 Exhibit Exh. M - 2011 Comp, # 16 Exhibit Exh. N - 2012 Comp, # 17 Exhibit Exh. O - 2013 Comp, # 18 Exhibit Exh. P - 2014 Comp, # 19 Exhibit Exh. Q - 2015 Comp, # 20 Exhibit Exh. R - 2016 Comp, # 21 Exhibit Exh. S - Split-Dollar Policy, # 22 Exhibit Exh. T - SDIA Amend, # 23 Exhibit Exh. U - SDIA Payments, # 24 Exhibit Exh. V - 2023 Mass Mutual Statement) (Cash, Joshua) (Entered: 02/01/2024) |
| 02/15/2024 | | Minute Entry and Order: A telephonic status conference was held on 2/15/2024 before Magistrate Judge Taryn A. Merkl. Appearances by Joshua Cash for Plaintiff and Peter T. Shapiro for Defendant Kaufman. Discussion held regarding case status and discovery. The Court notes that Plaintiff filed a motion for pre-motion conference related to an anticipated motion for summary judgment on 2/1/2024. The parties noted difficulties obtaining discovery from Defendant Kaufman, who is currently incarcerated. Plaintiff represented that should Plaintiff prevail on its motion for summary judgment, counsel anticipates dismissing the remaining causes of action and seeking final judgment. Discussion held about current discovery schedule and whether discovery should be temporarily stayed depending upon the outcome of Plaintiff's pre-motion conference letter. |
| | | The parties are directed to file a joint status report by **3/22/2024**, including an update as to their progress on discovery and a proposed schedule for completion of discovery. Ordered by Magistrate Judge Taryn A. Merkl on 2/15/2024. (AT&T Log #10:07-10:28.) (ALG) (Entered: 02/15/2024) |
| 02/15/2024 | 34 | Letter MOTION for Extension of Time to File *Opposition to Plaintiff's February 1, 2024 Letter Seeking a Pre-Motion Conference* by Alan Kaufman. (Shapiro, Peter) (Entered: 02/15/2024) |
| 02/16/2024 | | ORDER granting 34 Motion for Extension of Time to File. Defendant shall file a response to Plaintiff's 33 Letter Motion for Pre-Motion |

| | | Conference on or before February 22, 2024. Ordered by Judge Nina R. Morrison on 2/16/2024. (AD) (Entered: 02/16/2024) |
|---|---|---|
| 02/22/2024 | 35 | Letter *Response to Plaintiff's Letter Motion* by Alan Kaufman (Attachments: # 1 Rule 56.1 Statement) (Turner, Carrie) (Entered: 02/22/2024) |
| 03/21/2024 | 36 | STATUS REPORT *Joint Status Report - All Parties* by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union (Cash, Joshua) Modified motion type on 3/26/2024 (ALG). (Entered: 03/21/2024) |
| 03/26/2024 | | ORDER: The Court is in receipt of the joint status report 36 . In light of the motion for pre-motion conference before the Honorable Nina R. Morrison in anticipation of a motion for summary judgment, discovery is temporarily stayed. All discovery-related deadlines are adjourned, *sine die*. Ordered by Magistrate Judge Taryn A. Merkl on 3/26/2024. (ALG) (Entered: 03/26/2024) |
| 04/01/2024 | | ORDER denying 33 Motion for Pre-Motion Conference as unnecessary. The parties may proceed to briefing on Plaintiff's motion for partial summary judgment. The parties are directed to propose a briefing schedule to the Court by April 5, 2024.<br><br>In Defendant's opposition to Plaintiff's Motion for Pre-Motion Conference, Defendant argues that summary judgment is premature, in part because discovery is in a nascent stage. To the extent there is outstanding discovery that impacts Defendant's ability to oppose Plaintiff's motion, Defendant is directed to identify that discovery with specificity in his summary judgment opposition. Ordered by Judge Nina R. Morrison on 4/1/2024. (AD) (Entered: 04/01/2024) |
| 04/02/2024 | 37 | Proposed Scheduling Order *Proposed SJM Briefing Schedule* by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union (Cash, Joshua) (Entered: 04/02/2024) |
| 04/03/2024 | | SCHEDULING ORDER: The Court adopts the parties' 37 proposed briefing schedule. Plaintiff's motion is due on or before May 10, 2024, Defendant's opposition is due on or before June 21, 2024, and Plaintiff's reply is due on or before July 12, 2024. Ordered by Judge Nina R. Morrison on 4/3/2024. (AD) (Entered: 04/03/2024) |
| 05/10/2024 | 38 | Letter *P's SJM Cover Letter (confirming service), pursuant to Ind. R. 5.2.3.1* by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union (Cash, Joshua) (Entered: 05/10/2024) |
| 07/12/2024 | 39 | MOTION for Summary Judgment *v. Kaufman (Partial Summary Judgment)* by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union. (Attachments: # 1 Declaration Declaration of NCUAB, # 2 Proposed Findings of Fact and Conclusions of Law Statement of Undisputed Facts, # 3 Memorandum in |

|  |  | Support Memo of Law in Support, # 4 Exhibit Exh. A - Alan Kaufman Transcript, # 5 Exhibit Exh. B - 2008 Melrose Handbook, # 6 Exhibit Exh. C - Bribery Policy, # 7 Exhibit Exh. D - Kaufman Indictment, # 8 Exhibit Exh. E - Jury Instructions, # 9 Exhibit Exh. F - Verdict Form, # 10 Exhibit Exh. G - Restitution Order, # 11 Exhibit Exh. H - Melrose Ledger, # 12 Exhibit Exh. I - Letter to DIFS, # 13 Exhibit Exh. J - Dechert Termination Letter, # 14 Exhibit Exh. K - Super Bowl Email, # 15 Exhibit Exh. L - Super Bowl Emails, # 16 Exhibit Exh. M - 2011 Comp, # 17 Exhibit Exh. N - 2012 Comp, # 18 Exhibit Exh. O - 2013 Comp, # 19 Exhibit Exh. P - 2014 Comp, # 20 Exhibit Exh. Q - 2015 Comp, # 21 Exhibit Exh. R - 2016 Comp, # 22 Exhibit Exh. S - Split-Dollar Policy, # 23 Exhibit Exh. T - SDIA Amend, # 24 Exhibit Exh. U - SDIA Payments, # 25 Exhibit Exh. V - 2023 Mass Mutual Statement, # 26 Exhibit Exh. W - Kaufman Answer, # 27 Exhibit Exh. X - Notice of Charges) (Cash, Joshua) (Entered: 07/12/2024) |
| 07/12/2024 | 40 | MEMORANDUM in Opposition re 39 MOTION for Summary Judgment *v. Kaufman (Partial Summary Judgment)* filed by Alan Kaufman. (Attachments: # 1 Declaration of Peter T. Shapiro in Opposition, # 2 Exhibit A, # 3 Declaration of Alan Kaufman in Opposition, # 4 Rule 56.1 Statement Defendant Alan Kaufman's Counter-Statement of Undisputed Material Facts) (Shapiro, Peter) (Entered: 07/12/2024) |
| 07/12/2024 | 41 | REPLY in Support *of Motion for Partial Summary Judgment (and in Response to Kaufman's Opposition)* filed by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union. (Attachments: # 1 Declaration Supp Declaration of NCUAB, # 2 Exhibit Exh. Y - Trial Excerpts, # 3 Exhibit Exh. Z - Cynamon Transcript, # 4 Exhibit Exh. AA - Komitor Transcript) (Cash, Joshua) (Entered: 07/12/2024) |
| 07/15/2024 |  | ORDER REFERRING MOTION: Plaintiff's 39 Motion for Summary Judgment is respectfully referred to Magistrate Judge Taryn A. Merkl for a report and recommendation. Ordered by Judge Nina R. Morrison on 7/15/2024. (AD) (Entered: 07/15/2024) |
| 07/16/2024 | 42 | NOTICE of Appearance by Ariadne Anna Panagopoulou Alexandrou on behalf of Alan Kaufman (aty to be noticed) (Panagopoulou Alexandrou, Ariadne) (Entered: 07/16/2024) |
| 01/29/2025 | 43 | REPORT AND RECOMMENDATION: For the reasons set forth in the attached Report and Recommendation, this Court respectfully recommends that Plaintiff's partial motion for summary judgment (ECF No. 39 ) be granted in part.<br><br>Objections to this Report and Recommendation are due by **2/12/2025**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal any |

| | | |
|---|---|---|
| | | judgment or order entered by the District Court in reliance on this Report and Recommendation. *See Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate[ judge's] decision." (quotation marks omitted)). Ordered by Magistrate Judge Taryn A. Merkl on 1/29/2025. (ERT) (Entered: 01/29/2025) |
| 03/18/2025 | | ORDER ADOPTING REPORT AND RECOMMENDATIONS: The Court hereby adopts, in its entirety, the well reasoned 43 Report and Recommendation of the Honorable Taryn A. Merkl. It has been more than fourteen days since the filing of the R&R, and the parties have not filed objections. As such, pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72, this Court has reviewed the R&R for clear error, and finding none, now concurs in both its reasoning and its result. *See, e.g. Singh v. Anmol Food Mart, Inc.*, No. 22-CV-5475 (RER) (JAM), 2025 WL 611121, at *1 (E.D.N.Y. Feb. 26, 2025) (reviewing Report and Recommendation without objections for clear error). Accordingly, the R&R is adopted in its entirety. Plaintiff is directed to file a proposed judgment and order within two weeks: on or before April 1, 2025. Ordered by Judge Nina R. Morrison on 3/18/2025. (AH) (Entered: 03/18/2025) |
| 03/31/2025 | 44 | Proposed MOTION for Judgment on Partial Findings *Proposed Final Judgment* by National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union. (Cash, Joshua) (Entered: 03/31/2025) |
| 06/13/2025 | 45 | JUDGMENT in favor of National Credit Union Administration Board, as Liquidating Agent for Melrose Credit Union against Alan Kaufman. Ordered by Judge Nina R. Morrison on 6/13/2025. (AH) (Entered: 06/13/2025) |
| 07/07/2025 | 46 | NOTICE OF APPEAL as to 45 Judgment by Alan Kaufman. (VJ) (Entered: 07/07/2025) |
| 07/07/2025 | 47 | USCA Appeal Fees received $ 605 receipt number 100021659 re 46 Notice of Appeal filed by Alan Kaufman (VJ) (Entered: 07/07/2025) |
| 07/07/2025 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 46 Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 07/07/2025) |

| PACER Service Center |
|---|
| **Transaction Receipt** |

14

| 10/29/2025 19:03:41 | | | |
|---|---|---|---|
| PACER Login: | fishnow99 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:23-cv-01061-NRM-TAM |
| Billable Pages: | 9 | Cost: | 0.90 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as
Liquidating Agent for MELROSE
CREDIT UNION,

                            Plaintiff,

          -against-

ALAN KAUFMAN and MITCHELL
REIVER,

                       Defendants.

-------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
23-CV-1061 (NRM) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      On February 9, 2023, Plaintiff National Credit Union Administration Board

("NCUAB"), as liquidating agent for Melrose Credit Union ("Melrose"), initiated this

action against Defendants Alan Kaufman and Mitchell Reiver ("Defendants") for breach

of fiduciary duty and other claims relating to Defendants' alleged disloyalty and

misconduct while employed by Melrose. Before this case was filed, Defendant Kaufman

was indicted and convicted on two counts of accepting illegal gratuities in violation of

the Bank Bribery Act, 18 U.S.C. § 215(a)(2), following a two-week jury trial before the

Honorable Lewis A. Kaplan of the Southern District of New York. *See United States v.*

*Kaufman,* No. 19-CR-504 (LAK), 2021 WL 4084523, at *1 (S.D.N.Y. Sept. 8, 2021), *aff'd,*

No. 21-2589, 2023 WL 1871669 (2d Cir. Feb. 10, 2023). (Compl., ECF No. 1, ¶¶ 82–84.)

      Plaintiff now seeks summary judgment against Kaufman on two breach of

fiduciary duty claims, as well as a money judgment awarding damages and related

equitable relief. For the reasons set forth below, the Court respectfully recommends

granting Plaintiff's motion for summary judgment in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  Factual Background[1]

From 1998 to 2016, Kaufman was a full-time employee and the Chief Executive Officer of Melrose. (Pl.'s Rule 56.1 Statement ("Pl.'s 56.1"), ECF No. 39-2, ¶ 3; Def.'s Rule 56.1 Counterstatement ("Def.'s 56.1"), ECF No. 40-4, ¶ 3.) Kaufman also served as Treasurer of Melrose's Board of Directors ("Board"). (Pl.'s 56.1, ECF No. 39-2, ¶ 3; Def.'s 56.1, ECF No. 40-4, ¶ 3.) Defendant Reiver was Melrose's General Counsel, as well as its chief compliance officer. (Pl.'s 56.1, ECF No. 39-2, ¶ 19; Compl., ECF No. 1, ¶ 14.)

Melrose had two policies of relevance to this litigation. First, the Melrose Employee Handbook required that "[e]mployees must decline or return any gift or gratuity valued in excess of $100 from any member, vendor, supplier, or other person doing business with Melrose Credit Union," so that "business decisions, transactions, and services [we]re provided on an objective and professional basis." (Pl.'s 56.1, ECF No. 39-2, ¶ 4; Def.'s 56.1, ECF No. 40-4, ¶ 4; *see also* Melrose Employee Handbook, ECF No. 39-5, at ECF p. 6.) Kaufman disputes whether he, as an officer of Melrose, was bound by the employee handbook (Def.'s 56.1, ECF No. 40-4, ¶ 4), though he has admitted he was a full-time employee of Melrose, (*id.* at ¶ 3), and he previously testified in a deposition taken during the NCUAB investigation into Melrose that he was bound by the handbook. (*See* Kaufman Dep. Tr., ECF No. 39-4, at 52:22–25, 50:14–16 ("Q: And were you bound to comply with this business conduct rule? A Yes.").)

---

[1] The following material facts are drawn from Plaintiff's complaint, the parties' Local Rule 56.1 Statements of Material Facts, and evidence submitted in connection with the motion for summary judgment, and are undisputed unless otherwise noted.

Second, Melrose had a Bank Bribery Policy that prohibited any Melrose official, with some exceptions, from "[s]oliciting" or "accepting anything of value from anyone in connection with the business of the Credit Union, either before or after a transaction is discussed or consummated." (Pl.'s 56.1, ECF No. 39-2, ¶ 5; Def.'s 56.1, ECF No. 40-4, ¶ 5; Bank Bribery Policy, ECF No. 39-6, at ECF p. 2.) The policy also stated that a Melrose official "must disclose" the offering or receipt of "something of value beyond what is expressly authorized by this policy." (Bank Bribery Policy, ECF No. 39-6, at ECF p. 3.) If an official wanted to accept a gift "in connection with Credit Union business," the Board had to approve acceptance, and could only do so "if such approval [wa]s in writing, [wa]s based on a full written disclosure of all relevant facts, and [wa]s consistent with the bank bribery laws." (*Id.*) *See also Kaufman*, 2021 WL 4084523, at *2. The policy defined an "Official" as "an employee, officer, director, supervisory committee member, agent, or attorney of this Credit Union." (Pl.'s 56.1, ECF No. 39-2, ¶ 5; Def.'s 56.1, ECF No. 40-4, ¶ 5; Bank Bribery Policy, ECF No. 39-6, at ECF p. 1.) Plaintiff alleges that, because Kaufman was considered a Melrose official under the policy, the prohibitions applied to him.[2] (Pl.'s 56.1, ECF No. 39-2, ¶ 5.)

Plaintiff has alleged breach of fiduciary duty claims as to two separate illegal gratuity schemes committed by Kaufman between 2010 and 2016, as detailed below.

_____

[2] Kaufman's Rule 56.1 counterstatement as to this assertion by Plaintiff states: "Admitted but refers questions of law to the Court and notes that Plaintiff does not seek summary judgment based on any claimed judgment against Kaufman for bank bribery." (Def.'s 56.1, ECF No. 40-4, ¶ 5.) As set forth *supra*, the Bank Bribery Policy defines the word "official" in plain language that covers officers, directors, and employees. (*See* Bank Bribery Policy, ECF No. 39-6, at ECF p. 1.) Kaufman has neither advanced any evidence to dispute Plaintiff's assertion that the policy applied to him, nor articulated any legal question as to the applicability of this policy for the Court to resolve. Accordingly, the Court finds that this factual assertion is unrebutted for purposes of summary judgment.

### A. Allegations Relating to Kaufman's Relationship with Tony Georgiton

One breach of fiduciary duty claim (alleged as Plaintiff's third cause of action) stems from allegations involving Kaufman's relationship with Tony Georgiton, one of Melrose's perennial clients and largest borrowers. (Pl.'s 56.1, ECF No. 39-2, ¶ 9; Def.'s 56.1, ECF No. 40-4, ¶ 9; Kaufman Decl., ECF No. 40-3, ¶ 15; *see* Compl., ECF No. 1, ¶¶ 98–102.) According to Kaufman, he and Georgiton also shared a close, personal friendship. (Kaufman Decl., ECF No. 40-3, ¶¶ 15–17.)

In the fall of 2010, while Kaufman was going through a divorce, Georgiton offered to buy a house for Kaufman. (Compl., ECF No. 1, ¶ 57; Pl.'s 56.1, ECF No. 39-2, ¶ 10; Def.'s 56.1, ECF No. 40-4, ¶ 10.) After Kaufman accepted his offer, in December 2010, Georgiton purchased for Kaufman a $630,000 property located at 175 High Pond Drive, Jericho, New York (the "Jericho Residence"). (Pl.'s 56.1, ECF No. 39-2, ¶ 10; Def.'s 56.1, ECF No. 40-4, ¶ 10.) Kaufman claims that Board members were aware of the purchase. (Def.'s 56.1, ECF No. 40-4, ¶ 10.) Plaintiff alleges that Kaufman "intentionally failed" to notify the Board.[3] (Compl., ECF No. 1, ¶ 60; *see also* Pl.'s 56.1, ECF No. 39-2, ¶ 11.)

From approximately 2011 to 2013, Kaufman lived at the Jericho Residence without paying rent, only paying taxes and homeowners' association fees on Georgiton's behalf. (Pl.'s 56.1, ECF No. 39-2, ¶¶ 11–12; Def.'s 56.1, ECF No. 40-4, ¶¶ 11–12.) In order to make the payments appear as if they were from Georgiton, Kaufman opened an account at Melrose in Georgiton's name, deposited his own money into the

---

[3] The complaint alleges that Reiver was aware of and assisted with the Jericho Residence transaction. (Compl., ECF No. 1, ¶¶ 58–61.) Reiver was not a member of Melrose's Board at the time of the transaction. (*See id.* ¶ 13.) He became a Board member in late 2016, following Kaufman's removal from the Board. (*Id.*)

account, and signed Georgiton's name on checks from the account. (Pl.'s 56.1, ECF No. 39-2, ¶ 12; Def.'s 56.1, ECF No. 40-4, ¶ 12; *see also* Kaufman Dep. Tr., ECF No. 39-4, at 238:6–25 (indicating that Kaufman did not have power of attorney or any written agreement with Georgiton that allowed Kaufman to sign checks made out from Georgiton's bank account in Georgiton's name); Reiver Letter, ECF No. 39-12.) Between 2011 and 2012, Kaufman endorsed at least 50 checks in this manner. (Pl.'s 56.1, ECF No. 39-2, ¶ 12 (citing *Kaufman*, 2021 WL 4084523, at *3 & Kaufman Dep. Tr., ECF No. 39-4, at 239:1–9).)

While Kaufman was living in the Jericho Residence, he approved millions of dollars of loans on behalf of Melrose, which included personally approving several fifty-year amortization loans, for Georgiton and his companies. (Pl.'s 56.1, ECF No. 39-2, ¶ 13; Def.'s 56.1, ECF No. 40-4, ¶ 13.) Plaintiff alleges that the loans had terms that were particularly favorable to Georgiton's companies, to Melrose's detriment. (Compl., ECF No. 1, ¶ 65.) Plaintiff further alleges that Kaufman did not regularly approve loans on Melrose's behalf; Defendant contends that he approved loans "from time to time" and that the loans he approved for Georgiton's companies were also authorized by a committee at Melrose. (Pl.'s 56.1, ECF No. 39-2, ¶ 13; Def.'s 56.1, ECF No. 40-4, ¶ 13.)

In September 2011, while Kaufman was still living in the Jericho Residence, he presented Melrose's Board with a proposal under which Melrose would pay $2 million to the Harama Entertainment Corp. ("Harama") in exchange for the naming rights to an entertainment venue, later named the Melrose Ballroom. (Pl.'s 56.1, ECF No. 39-2, ¶ 14; Def.'s 56.1, ECF No. 40-4, ¶ 14.) Georgiton was a Harama shareholder. (Pl.'s 56.1, ECF No. 39-2, ¶ 14; Def.'s 56.1, ECF No. 40-4, ¶ 14.) Plaintiff alleges that the Board relied on Kaufman's representations as to the purported value of the naming rights in choosing to approve the agreement. (*See* Pl.'s 56.1, ECF No. 39-2, ¶ 14.)

Under the agreement, Melrose agreed to pay Harama $2 million over five years in $400,000 installments for the naming rights, as long as no payment was made until the ballroom was fully constructed. (Pl.'s 56.1, ECF No. 39-2, ¶¶ 14–15; Def.'s 56.1, ECF No. 40-4, ¶¶ 14–15.) Kaufman later directed Melrose's comptroller to pay the first $400,000 installment despite construction being incomplete. (Pl.'s 56.1, ECF No. 39-2, ¶ 15; Def.'s 56.1, ECF No. 40-4, ¶ 15.) Kaufman alleges that he and Reiver negotiated with Harama to make the payment in advance of the completion of construction provided that Harama throw a holiday party for Melrose. (Def.'s 56.1, ECF No. 40-4, ¶ 15.) Kaufman further alleges that some Board and Supervisory Committee members were aware of this arrangement. (*Id.*)

In January 2013, Kaufman bought the Jericho Residence from Georgiton for $630,000, the same price that Georgiton had paid for it three years earlier. (Pl.'s 56.1, ECF No. 39-2, ¶ 16; Def.'s 56.1, ECF No. 40-4, ¶ 16.) Kaufman financed the purchase by taking out a $200,000 loan from Melrose. (Pl.'s 56.1, ECF No. 39-2, ¶ 16; Def.'s 56.1, ECF No. 40-4, ¶ 16.) The loan was cosigned by Georgiton and secured by Georgiton's Melrose share account, which resulted in Kaufman receiving a more favorable interest rate. (Pl.'s 56.1, ECF No. 39-2, ¶ 16; *see* Def.'s 56.1, ECF No. 40-4, ¶ 16; *see also* Kaufman Dep. Tr., ECF No. 39-4, at 243:15–244:24 (stating that without Georgiton securing the loan with his shares, Kaufman "probably wouldn't have gotten the loan").) Plaintiff alleges that Kaufman did not inform the Board that he purchased the Jericho Residence from Georgiton or that he financed the purchase with the loan from Georgiton. (Pl.'s 56.1, ECF No. 39-2, ¶ 18.) Kaufman contends that "[s]everal Board members" knew about the house purchase and the loan. (Def.'s 56.1, ECF No. 40-4, ¶ 18.)

Georgiton separately took out an additional loan from Melrose, the proceeds of which he then used to provide a separate $240,000 personal "loan" to Kaufman. (Pl.'s

56.1, ECF No. 39-2, ¶ 17; Def.'s 56.1, ECF No. 40-4, ¶ 17.) Kaufman alleges this loan was made "with the understanding that Kaufman could repay the loan when he was able to do so or when he sold the house." (Def.'s 56.1, ECF No. 40-4, ¶ 17.) Kaufman has not made a single payment towards the loan, nor has he received any demand from Georgiton to repay the loan. (Pl.'s 56.1, ECF No. 39-2, ¶ 17; Def.'s 56.1, ECF No. 40-4, ¶ 17; Kaufman Decl., ECF No. 40-3, ¶ 35.) Kaufman never disclosed to the Melrose Board that Georgiton had provided him a personal loan. (Pl.'s 56.1, ECF No. 39-2, ¶ 18; Def.'s 56.1, ECF No. 40-4, ¶ 18.)

**B.  Allegations Relating to Kaufman's Dealings with CBS Radio**

The second scheme (alleged as Plaintiff's second cause of action) involves Kaufman's acceptance of illegal gratuities from CBS Radio. (Pl.'s 56.1, ECF No. 39-2, ¶¶ 21–23; *see* Compl., ECF No. 1, ¶¶ 93–97.) CBS Radio had an "incentive vacation plan" that offered clients fully paid vacations in return for increasing their companies' spending on advertising with CBS Radio. (Pl.'s 56.1, ECF No. 39-2, ¶ 22; Def.'s 56.1, ECF No. 40-4, ¶ 22; 2010 Elkisch Email, ECF No. 39-14 (emailing Kaufman regarding the "CBS Radio client incentive trip" and reminding him that "[c]lient participation, as always, is based on quarterly incremental spending").) Plaintiff alleges that, from 2010 to 2015, Kaufman solicited and accepted from CBS Radio paid luxury trips given to him because of Melrose's past advertising expenditures. (Pl.'s 56.1, No. 39-2, ¶¶ 21–23; Compl., ECF No. 1, ¶ 77; *see* 2010 Elkisch Email, ECF No. 39-14; 2013 Elkisch Email, ECF No. 39-15.) During this period, Melrose spent hundreds of thousands of dollars advertising with the company; in 2012 alone, Melrose spent $620,000 on advertising expenditures through CBS Radio. (Pl.'s 56.1, ECF No. 39-2, ¶¶ 22–23; Def.'s 56.1, ECF No. 40-4, ¶¶ 22–23.) On summary judgment, Kaufman admits that "CBS Radio offered its best clients vacation packages under its incentive vacation plan," and that "Melrose

spent significant amounts advertising with CBS Radio, but denie[s] that the two were causally linked." (Def.'s 56.1, ECF No. 40-4, ¶ 22.) Kaufman's Rule 56.1 counterstatement further asserts that he did not negotiate or attempt to negotiate a contract "in exchange" for a vacation package and that he did not spend or authorize spending for advertising above what Melrose's marketing director, Robert Nemeroff, "deemed appropriate for Melrose to spend for advertising purposes." (*Id.*)

In addition to the CBS Radio trips, Kaufman accepted and took fully paid vacations offered by other Melrose vendors.[4] (Pl.'s 56.1, ECF No. 39-2, ¶ 24; Def.'s 56.1, ECF No. 40-4, ¶ 24; Kaufman Decl., ECF No. 40-3, ¶¶ 50–61 (stating that Kaufman took trips to Sweden to watch the New York Rangers and to New Orleans that were paid for by Madison Square Garden, and attended a draft party for the NFL through the New York Jets).) Plaintiff alleges that there is no evidence that Kaufman informed the Board of these offers or accepted the vendors' vacation packages with the Board's approval. (Pl.'s 56.1, ECF No. 39-2, ¶ 26.) Kaufman contends that the Board was informed, and that other Board members had previously accepted vacation offers from vendors. (Def.'s 56.1, ECF No. 40-4, ¶¶ 24, 26.) Kaufman also claims that the vendors provided

---

[4] Although the Court includes these allegations for completeness, the Court notes that the second cause of action in the complaint alleges that Kaufman "breached his fiduciary duty to Melrose through soliciting and utilizing lavish vacations paid for by CBS Radio," and does not include allegations regarding other vendors. (Compl., ECF No. 1, ¶¶ 93–97.) As discussed *infra*, at his criminal trial, Kaufman was convicted on two illegal gratuity schemes, one based on the receipt of things of value from Georgiton and one based on the receipt of things of value from Melrose vendors. (Indictment, ECF No. 39-7, ¶¶ 22–23 (Count Two, charging Kaufman with the Georgiton bribery scheme) & ¶¶ 26–32 (Count Four, charging Kaufman with a bribery scheme based on vendor-paid trips).) As set forth below, the undisputed facts regarding Kaufman's receipt of trips from CBS Radio are more than sufficient to find that Plaintiff has established a breach of fiduciary duty. Accordingly, the proffered facts about trips provided by vendors other than CBS Radio are not material to the Court's summary judgment analysis and any disputes of fact regarding these other trips do not preclude summary judgment on the two causes of actions at issue in the present motion.

these trips because of his relationship with them, not because of Melrose's spending. (Def.'s 56.1, ECF No. 40-4, ¶ 25.) Since his termination, Kaufman was offered free tickets to one New York Jets game but has not received any vacation packages or other ticket offers from vendors. (Pl.'s 56.1, ECF No. 39-2, ¶ 25; Def.'s 56.1, ECF No. 40-4, ¶ 25.)

### C. Kaufman's Termination

After an internal investigation revealed Kaufman's alleged misconduct, Kaufman was removed for cause as CEO and Treasurer by the Melrose Board on or about June 28, 2016.[5] (Pl.'s 56.1, ECF No. 39-2, ¶ 20; Def.'s 56.1, ECF No. 40-4, ¶ 20; Dechert Letter, ECF No. 39-13.) The Board terminated Kaufman's employment due to his "violation of important policies, standards of conduct and law," including his conduct with Georgiton and acceptance of gifts and expenses "from Melrose vendors, in violation of Melrose's Business Expense Reimbursement Policy and its Policy Regarding Bank Bribery Laws." (Dechert Letter, ECF No. 39-13 (explaining the decision to terminate Kaufman's employment).) Kaufman was asked to resign from Melrose's Board on July 5, 2016. (*See id.* at 2.)

### D. Criminal Case

Kaufman and Georgiton were indicted in the Southern District of New York on July 10, 2019. (Pl.'s 56.1, ECF No. 39-2, ¶ 6; Def.'s 56.1, ECF No. 40-4, ¶ 6.) Kaufman was charged in three counts, including one count of conspiracy to violate the Bank Bribery Act, in violation of Title 18, United States Code, Section 371 (Count One), and two counts of substantive bribery, in violation of Title 18, United States Code, Sections

---

[5] The complaint alleges that Kaufman was removed as Treasurer on or about October 25, 2016. (*See* Compl., ECF No. 1, ¶ 12.) The Dechert letter indicates that Kaufman was removed as both CEO and Treasurer at the same time. (*See* Dechert Letter, ECF No. 39-13, at 1.)

215(a)(2) and 2. (*United States v. Kaufman* Indictment ("Indictment"), ECF No. 39-7)

(charging Kaufman with bribery in Counts Two and Four).) On September 9, 2020,

Georgiton pled guilty to the conspiracy count, admitting his involvement in the scheme

related to the Melrose Ballroom naming rights agreement. (Compl., ECF No. 1, ¶ 83.) As

detailed further below, following a two-week jury trial before Judge Kaplan, Kaufman

was acquitted of the conspiracy count and convicted of the two substantive charges in

which he was named, with a special finding by the jury that the verdict was based on

Kaufman's receipt of illegal gratuities. *Kaufman*, 2021 WL 4084523, at *1, 8. (*See United

States v. Kaufman* Verdict Form ("Verdict Form"), ECF No. 39-9.) One count of

conviction (Count Two) charged Kaufman's receipt of illegal gratuities from Georgiton;

the second count of conviction (Count Four) charged Kaufman's receipt of illegal

gratuities from Melrose vendors, including CBS Radio. (Pl.'s 56.1, ECF No. 39-2, ¶¶ 7, 9,

21; Def.'s 56.1, ECF No. 40-4, ¶¶ 7, 9, 21.) *See generally Kaufman*, 2021 WL 4084523, at *8–

13.

      At trial, Judge Kaplan instructed the jury as to the essential elements of the

substantive counts as follows:

> To find Mr. Kaufman guilty on either Count Two or Count Four, the
> government must prove each of the following four elements beyond a
> reasonable doubt: First, it must prove that at the time of the events alleged
> in the relevant time found in the indictment, the defendant was an officer
> or director or employee of a financial institution as that term is defined
> under federal law, which includes a credit union. Second that the
> defendant solicited or demanded for the benefit of any person or accepted
> or agreed to accept something of value as charged in the relevant count.
> Third, the government must prove that the defendant did so as charged in
> the relevant count corruptly and with the intent to be influenced or
> rewarded in connection with any business or transaction of that financial
> institution. Fourth, it must prove that the thing of value solicited or
> accepted by the defendant had a value of greater than a thousand dollars.

(*United States v. Kaufman* Jury Instructions ("Jury Instrs."), ECF No. 39-8, at 1163:4–20.)

With respect to the third element, i.e., that Kaufman had acted "corruptly," Judge

Kaplan further explained: "To act corruptly, simply means to act voluntarily and intentionally with an improper motive or purpose to be influenced in connection with or rewarded for some business or transaction of Melrose." (*Id.* at 1164:22–25.) Judge Kaplan continued, in pertinent part, as follows:

> [T]o find corrupt intent, that is to convict on a bribery theory, you must find that Mr. Kaufman had the intent to be influenced in connection with some business or transaction of Melrose. As I explained previously, conviction on a bribery theory requires proof of a quid pro quo, a specific intent to solicit or accept something of value at least in part in exchange for some business or transaction of the financial institution.
>
>      To convict on a gratuity theory on the other hand, you must find that Mr. Kaufman had the intent to be rewarded for or because of some past, present or future business or transaction of Melrose that the defendant has or will take or had even determined at that moment to take. This theory requires the government to prove only that there was a link between the thing of value conferred on the defendant and a specific act in connection with the business of the credit union for or because of which he solicited or accepted payment. It is not sufficient that a gratuity was given merely because the defendant had authority over matters in which the payor had an interest.

(*Id.* at 1165:10–1166:4.)

On March 31, 2021, the jury returned a verdict of guilty on both counts charged under 18 U.S.C. § 215(a)(2), concluding that Kaufman accepted illegal gratuities while serving as an officer of Melrose. (Pl.'s 56.1, ECF No. 39-2, ¶ 7; Def.'s 56.1, ECF No. 40-4, ¶ 7; *see also* Verdict Form, ECF No. 39-9.) Kaufman was sentenced to 46 months of imprisonment and ordered to pay $2 million in restitution to the NCUAB, as liquidating agent for Melrose, "the victim of the two crimes of which Kaufman was convicted." (Pl.'s 56.1, ECF No. 39-2, ¶ 8; Def.'s 56.1, ECF No. 40-4, ¶ 8; *see also* Order of Restitution, ECF No. 39-10.) *See United States v. Kaufman*, No. 19-CR-504 (LAK), 2021 WL 8055691, at *1 (S.D.N.Y. Oct. 27, 2021) (summarizing Kaufman's sentence). The $2 million restitution order was based on Judge Kaplan's finding of actual loss to Melrose for its expenditure to acquire the ballroom naming rights discussed above, which the

sentencing court determined "'had no value to Melrose.'" (Pl.'s 56.1, ECF No. 39-2, ¶ 8 (quoting *Kaufman*, 2023 WL 1871669, at *5); Def.'s 56.1, ECF No. 40-4, ¶ 8.) The Court of Appeals for the Second Circuit affirmed the judgment against Kaufman on February 10, 2023. *Kaufman*, 2023 WL 1871669.

After Kaufman's conviction was affirmed, he filed a motion for a new trial as to Count Two of his conviction, based on alleged newly discovered evidence regarding venue as to the Georgiton illegal gratuities count. *United States v. Kaufman*, No. 19-CR-504 (LAK), 2023 WL 4493499, at *1 (S.D.N.Y. July 12, 2023). Judge Kaplan denied the motion. (*Id.*) Kaufman again filed an appeal with the Second Circuit, which remains pending as of the time of this opinion. (*See* Def.'s Mem. in Opp'n to Summ. J. ("Def.'s Opp'n"), ECF No. 40, at 5.)

## II. Procedural History

As noted above, Plaintiff initiated this action on February 9, 2023. (Compl., ECF No. 1.) Plaintiff alleged causes of action against Kaufman for (1) breach of fiduciary duty arising from usurpation of an opportunity belonging to Melrose, (2) breach of fiduciary duty related to his solicitation and acceptance of paid vacations from CBS Radio, (3) breach of fiduciary duty related to his acceptance of benefits from Georgiton, and (4) unjust enrichment. (*See* Compl., ECF No. 1.) Plaintiff also brought claims against Defendant Reiver for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment; the claims against Reiver have since been dismissed. (*See generally* Compl., ECF No. 1; Pl.'s Mem. in Supp. of Summ. J. ("Pl.'s Mem."), ECF No. 39-3, at 3.)

By way of background, on April 21, 2023, both Defendants filed motions for a pre-motion conference in anticipation of filing motions to dismiss. (Reiver Letter Mot., ECF No. 13; Kaufman Letter Mot., ECF No. 14.) Plaintiff filed a response in opposition

to both motions on April 28, 2023. (Pl.'s Response in Opp'n, ECF No. 15.) On June 2,

2023, the Hon. Nina R. Morrison held a pre-motion conference at which she indicated

her intent to construe Defendants' motions to dismiss Plaintiff's unjust enrichment

claim under Rule 12(b)(7) for failure to join an indispensable party as made but granted

the parties leave to submit additional arguments.[6] (June 2, 2023 ECF Min. Entry &

Order.) On June 12, 2023, both Defendants filed motions to dismiss. (Reiver Mot. to

Dismiss, ECF No. 16; Kaufman Mot. to Dismiss, ECF No. 17.) On July 13, 2023, Judge

Morrison denied both motions. (July 13, 2023 ECF Order.)

Defendant Kaufman filed his answer on July 28, 2023, and Defendant Reiver filed

an answer and counterclaim against NCUAB on July 31, 2023. (*See* Answer, ECF No. 21;

Answer & Countercl., ECF No. 22.) The Court scheduled an initial conference for

September 20, 2023, but the parties moved to adjourn the conference so that they could

continue settlement negotiations. (Aug. 14, 2023 ECF Rescheduling Order; Letter Mot.

to Adjourn Conf., ECF No. 24; Aug. 17, 2023 ECF Order Granting Mot.) The parties also

sought and received several extensions on Plaintiff's deadline to file a response to

Reiver's counterclaim. (Letter Mot. for Extension of Time, ECF No. 24; Aug. 17, 2023

ECF Order Granting Mot.; Letter Mot. for Extension of Time, ECF No. 26; Sept. 18, 2023

ECF Order Granting Mot.)

At the rescheduled initial conference, Plaintiff and Reiver represented that they

anticipated filing a stipulation of dismissal with prejudice solely as to Reiver. (Oct. 30,

2023 ECF Min. Entry & Order.) Plaintiff and Reiver filed a partial stipulation of

---

[6] Kaufman also initially requested to file a motion to dismiss all claims against him
based on the restitution order entered in the underlying criminal case. (Kaufman Letter Mot.,
ECF No. 14.) He withdrew this request at the June 2, 2023 pre-motion conference before Judge
Morrison. (June 2, 2023 ECF Min. Entry & Order.)

dismissal as to the claims against Reiver and his counterclaim on January 17, 2024; the claims were dismissed shortly thereafter. (Jan. 17, 2024 Partial Stip. of Dismissal, ECF No. 32; Jan. 19, 2024 ECF Order Dismissing Parties.[7])

On February 1, 2024, Plaintiff filed a letter motion requesting a pre-motion conference in anticipation of filing a motion for summary judgment. (Letter Mot. for Pre-Motion Conf., ECF No. 33.) At a February 15, 2024 status conference, the parties represented that there were difficulties in obtaining discovery from Kaufman, who was incarcerated. (Feb. 15, 2024 ECF Min. Entry & Order.) Plaintiff also indicated that should Plaintiff prevail on its summary judgment motion, Plaintiff anticipated dismissing any remaining causes of action and seeking final judgment. (*Id.*) Kaufman filed a response to Plaintiff's letter motion for a pre-motion conference on February 22, 2024, arguing that summary judgment is premature given that discovery was incomplete and Kaufman's appeal to the Second Circuit was pending. (Letter, ECF No. 35.)

On March 21, 2024, the parties filed a joint status report. (Joint Status Report, ECF No. 36.) In the report, Plaintiff again indicated that "if summary judgment is successful, it anticipates dismissing the remaining causes of action and seeking final judgment." (*Id.*) The parties requested a temporary stay of discovery while Plaintiff's pre-motion conference letter was pending. (*Id.*) The Court temporarily stayed discovery on March 26, 2024. (Mar. 26, 2024 ECF Order.)

─────────────────

[7] The parties' first stipulation of dismissal did not address Reiver's counterclaim. (*See* Jan. 11, 2024 ECF Order; Partial Stip. of Dismissal, ECF No. 30.) Judge Morrison directed the parties to file a revised stipulation of dismissal if they intended to also dismiss Reiver's counterclaim, which they subsequently did. (Jan. 11, 2024 ECF Order; Partial Stip. of Dismissal, ECF No. 32.)

On April 1, 2024, Judge Morrison denied Plaintiff's motion for a pre-motion conference and directed the parties to file a proposed briefing schedule. (Apr. 1, 2024 ECF Order.) Judge Morrison also noted that, "[t]o the extent there is outstanding discovery that impacts Defendant's ability to oppose Plaintiff's motion, Defendant is directed to identify that discovery with specificity in his summary judgment opposition." (*Id.*) On April 2, 2024, the parties proposed a joint briefing schedule, which was entered the next day. (Proposed Scheduling Order, ECF No. 37; Apr. 3, 2024 ECF Scheduling Order.)

On July 12, 2024, the parties filed the fully briefed partial summary judgment motion. (*See* Mot. for Summ. J., ECF No. 39; Def.'s Opp'n, ECF No. 40; Pl.'s Reply, ECF No. 41.) On July 15, 2024, Judge Morrison referred the fully briefed motion for summary judgment to the undersigned Magistrate Judge for a report and recommendation. (July 15, 2024 ECF Order Referring Mot.) For the following reasons, the Court respectfully recommends that Plaintiff's motion for summary judgment be granted in part.

**DISCUSSION**

## I. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Darnell v. Pineiro*, 849 F.3d 17, 22 (2d Cir. 2017). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). The Court must

"view all facts in this case in the light most favorable to the non-movant, resolving all ambiguities in [the non-movant's] favor." *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). "Put another way, summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-movant." *Id.* (alterations and quotation marks omitted).

The movant "bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Nick's Garage, Inc.*, 875 F.3d at 114 (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 323). Once the moving party has satisfied their burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added in *Matsushita*); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). However, summary judgment must be denied "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).[8]

-----

[8] The moving party is also required to submit a statement to support their assertion that there are no material facts in dispute. Rule 56(c) states:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Lener v. Hempstead Pub. Schs.*, 55 F. Supp. 3d 267, 274 (E.D.N.Y. 2014).

When considering whether a movant is entitled to summary judgment, the Court cannot weigh the evidence or make credibility determinations to decide the truth of the matter, but instead must determine "'whether there is a genuine issue for trial.'" *Green v. Town of E. Haven*, 952 F.3d 394, 406 (2d Cir. 2020) (quoting *Anderson*, 477 U.S. at 249). District courts are "required to 'resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment.'" *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001)); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). In addition, courts "may not properly consider the record in piecemeal fashion, trusting innocent explanations for individual strands of evidence; rather, it must review all of the evidence in the record." *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 386 (2d Cir. 2020).

## II. Analysis

Plaintiff now moves for summary judgment against Kaufman on its claims of breach of fiduciary duty based on (1) Kaufman's receipt of benefits from Georgiton, and (2) Kaufman's receipt of paid luxury vacations from CBS Radio.[9] (Pl.'s Mem., ECF No. 39-3; *see* Compl., ECF No. 1.) Plaintiff asserts that it is entitled to summary judgment as Kaufman's misconduct is undisputed, and, due to his criminal convictions, Kaufman is estopped from contesting any facts that establish his liability. (Pl.'s Mem., ECF No. 39-3, at 5–11.) Plaintiff additionally posits that, even if collateral estoppel does not apply,

---

[9] As set forth above, Plaintiff brought additional claims against Kaufman. Plaintiff now moves for summary judgment only on its breach of fiduciary duty claims relating to Georgiton and CBS Radio. (Pl.'s Mem., ECF No. 39-3, at 3.) Plaintiff has repeatedly represented that, should it succeed on its summary judgment motion, it intends to dismiss all remaining claims and seek entry of a final judgment in this case. (*See, e.g., id.*)

there are no material facts in dispute as to whether Kaufman owed a fiduciary duty to Melrose, breached that duty in his dealings with Georgiton and misconduct with CBS Radio, and caused Melrose to suffer damages. (*See generally id.*) Finally, Plaintiff alleges it is entitled to forfeiture of Kaufman's compensation during the relevant period of breach and equitable relief requiring Kaufman to forfeit his interest in and control over a life insurance policy Melrose entered into on his behalf, or, in the alternative, permanent injunctive relief to ensure that Plaintiff may recover the value of the policy. (*Id.* at 16–24.)

Kaufman argues that summary judgment is premature because there has been little to no discovery and his criminal conviction is subject to a pending appeal. (Def.'s Opp'n, ECF No. 40, at 1.) Kaufman further argues that there are genuine issues of material fact as to whether Plaintiff can prove damages sufficient to establish an essential element of the breach of fiduciary duty claims. (*Id.* at 1–2.) With respect to an award of damages, Kaufman argues that Plaintiff cannot prove at summary judgment entitlement to forfeiture of Kaufman's compensation and life insurance policy, and to the extent damages are awarded, those damages should be set off against the $2 million restitution order entered against Kaufman in the criminal case. (*Id.* at 2.)

## A. Collateral Estoppel

The Court must first address a threshold issue: whether Kaufman is estopped from disputing any facts established by his criminal convictions in *United States v.*

*Kaufman*.[10] Plaintiff first argues that Kaufman is estopped due to the applicability of Title 18, United States Code, Section 3664(*l*), a subsection of one of the federal criminal restitution statutes, which provides as follows:

> A conviction of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding, to the extent consistent with State law, brought by the victim.

18 U.S.C. § 3664(*l*). (*See* Pl.'s Mem., ECF No. 39-3, at 5–6.) *See also United States v. Sawyer*, 521 F.3d 792, 797 (7th Cir. 2008) (observing that "a victim could initiate a separate civil suit, and the wrongdoer's liability would be incontestable as a result of § 3664(*l*)").

Kaufman was convicted under 18 U.S.C. § 215(a)(2), of "an offense involving the act giving rise to an order of restitution." 18 U.S.C. § 3664(*l*). (*See* Verdict Form, ECF No. 39-9; Pl.'s 56.1, ECF No. 39-2, ¶ 7; Def.'s 56.1, ECF No. 40-4, ¶ 7.) As discussed above, Kaufman was ordered to pay $2 million in restitution to the NCUAB, as liquidating agent for Melrose, for actual losses suffered by Melrose related to the naming rights deal with Georgiton's company. (Pl.'s 56.1, ECF No. 39-2, ¶ 8; Def.'s 56.1, ECF No. 40-4, ¶ 8; Restitution Order, ECF No. 39-10.) *See also Kaufman*, 2023 WL 1871669, at *5. The

---

[10] Kaufman's brief correctly recognizes that district courts have broad discretion to determine whether collateral estoppel applies but argues that Plaintiff's reliance on estoppel is premature while Kaufman's appeal of the denial of a post-conviction motion in the criminal case is pending. (Def.'s Opp'n, ECF No. 40, at 9–11.) In Kaufman's view, granting summary judgment on estoppel grounds is inappropriate when the underlying criminal conviction may be vacated or overturned. (*Id.*) Given that Kaufman's conviction has already been affirmed on his merits appeal, and that the only currently pending issue on appeal following his motion for new trial is whether the district court had venue over one of the two counts of conviction, Kaufman's argument that it is premature to apply collateral estoppel at this stage is unpersuasive. *See generally Kaufman*, 2023 WL 4493499. The Court also notes that the Second Circuit has held that "the pendency of an appeal from a conviction does not deprive a judgment of its preclusive effect." *United States v. 303 W. 116th St., New York, New York*, 901 F.2d 288, 292 (2d Cir. 1990); *see also SEC v. Illarramendi*, 732 F. App'x 10, 12 (2d Cir. 2018); *SEC v. Namer*, No. 97-CV-2085 (PKC), 2004 WL 2199471, at *8 (S.D.N.Y. Sept. 30, 2004) (collecting cases).

NCUAB, as Melrose's liquidating agent, is the "victim" of Kaufman's violations of § 215(a)(2). (Pl.'s 56.1, ECF No. 39-2, ¶ 8; Def.'s 56.1, ECF No. 40-4, ¶ 8.) *See* 18 U.S.C. § 3664(*l*); *Kaufman*, 2023 WL 1871669, at *5 (affirming the restitution order based on losses suffered due to the Melrose Ballroom naming rights agreement). For these reasons, Plaintiff asserts that Kaufman is estopped from denying "the essential allegations" of his violations of 18 U.S.C. § 215(a)(2) and the NCUAB may pursue subsequent civil proceedings against him. *See* 18 U.S.C. § 3664(*l*); *see also Cumis Ins. Soc'y v. CU Pac. Audit Sols., LLC*, No. 14-CV-00140 (LEK) (BMK), 2015 WL 7737311, at *4 (D. Haw. Nov. 30, 2015) (holding that defendants are estopped from denying facts underlying their criminal convictions and that plaintiff is entitled to judgment as a matter of law against defendants).

The Court finds that although the plain statutory text of § 3664(*l*) estops Kaufman from "denying the essential allegations" of his illegal gratuities convictions, the restitution ordered in his criminal case was designed to reimburse Melrose for the $2 million loss incurred as a result of the naming rights deal, which comprised only one aspect of the underlying scheme involving Georgiton, and the restitution order thus did not address all of Kaufman's criminal acts underlying that offense of conviction. *See* 18 U.S.C. § 3664(*l*). Given the common law of collateral estoppel discussed *infra*, however, the Court need not decide the question of whether a restitution order entered to compensate a victim for an "act giving rise to an order of restitution," *id.*, based on one aspect of a defendant's criminal scheme, would preclude any future challenges of facts related to other criminal acts underlying the same count of conviction.

Regardless of whether 18 U.S.C. § 3664(*l*) applies, Kaufman should still be estopped from disputing the issues decided in the underlying criminal conviction in this proceeding. "The law is well[ ]established that a criminal conviction collaterally

estops a litigant from challenging in a subsequent civil action issues decided in that prosecution." *SEC v. Illarramendi*, 732 F. App'x 10, 12 (2d Cir. 2018) (collecting cases); *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978) (affirming summary judgment in which defendant's guilty plea estopped him from denying his breach of fiduciary duty). "In a civil case, it is appropriate to estop a party from relitigating issues actually and necessarily decided as part of a prior criminal judgment and conviction, in part because '[t]he government bears a higher burden of proof in the criminal than in the civil context.'" *SEC v. Namer*, No. 97-CV-2085 (PKC), 2004 WL 2199471, at *4 (S.D.N.Y. Sept. 30, 2004) (quoting *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 43 (2d Cir. 1986)). "Because mutuality of estoppel is no longer an absolute requirement under federal law, a party other than the Government may assert collateral estoppel based on a criminal conviction." *Gelb*, 798 F.2d at 44 (citations omitted).

The district court is afforded "'broad discretion' in determining whether to deny collateral estoppel." *Namer*, 2004 WL 2199471, at *4 (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)). For federal criminal convictions to have a collateral estoppel effect in subsequent civil actions, the following four factors must be satisfied:

> (1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits.

*Gelb*, 798 F.2d at 44. All four factors are met here.

1. *Factors One and Two: Identical Issues Actually Litigated & Decided*

As to the first factor, whether the issues in both proceedings are identical, in finding Kaufman guilty of accepting illegal gratuities in violation of 18 U.S.C. § 215(a)(2), the jury necessarily made the following findings: (1) that he "was an officer or director or employee of a financial institution . . . which includes a credit union";

(2) that he "solicited or demanded for the benefit of any person or accepted or agreed to accept something of value"; (3) that his actions were done "corruptly and with the intent to be influenced or rewarded in connection with any business or transaction of that financial institution"; and (4) that "the thing of value [he] solicited or accepted . . . had a value of greater than a thousand dollars." (Jury Instrs., ECF No. 39-8, at 1163:4–20; Verdict Form, ECF No. 39-9.) The jury also necessarily found that "there was a link between the thing of value conferred on [Kaufman] and a specific act in connection with the business of the credit union for or because of which he solicited or accepted payment." (Jury Instrs., ECF No. 39-8, at 1165:23–1166:1; Verdict Form, ECF No. 39-9.)

Here, for Plaintiff to be entitled to summary judgment on the breach of fiduciary duty claims, there must be no material dispute as to whether Kaufman has breached his fiduciary obligations, as discussed in more detail below. In a nutshell, "[u]nder New York law, the elements of a claim for breach of fiduciary duty are: '(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'" *Schwartzco Enters. LLC v. TMH Mgmt., LLC,* 60 F. Supp. 3d 331, 352 (E.D.N.Y. 2014) (quoting *Johnson v. Nextel Commc'ns, Inc.,* 660 F.3d 131, 138 (2d Cir. 2011)). "A breach of fiduciary duty, and generally in tandem, of loyalty, occurs when a fiduciary commits an unfair, fraudulent, or wrongful act . . . .'" *Poller v. BioScrip, Inc.,* 974 F. Supp. 2d 204, 227 (S.D.N.Y. 2013) (quoting *Beard Rsch., Inc. v. Kates,* 8 A.3d 573, 602 (Del. Ch. 2010)).

As addressed below, there are no material issues in dispute as to whether Kaufman was an officer of Melrose, and thus owed the credit union a fiduciary duty. Accordingly, the pertinent questions here are whether the jury's findings necessarily determined that Kaufman (1) breached his fiduciary duty and (2) caused damages. For

the reasons discussed in the next section, the Court does not recommend finding *res judicata* as to damages as that issue was not before the jury in Kaufman's criminal trial. *Cf. In re Adelphia Commc'ns Corp.*, Nos. 03-MD-1529 (LMM), 03-CV-5750, 03-CV-5751, 2006 WL 2463355, at *8–9 (S.D.N.Y. Aug. 23, 2006) (finding collateral estoppel applied to some but not all elements of plaintiffs' claim).

On the question of whether Kaufman breached his fiduciary obligations, however, the jury's verdict necessarily reached that issue. In order to convict, the jury was required to find that Kaufman acted "corruptly," which Judge Kaplan explained meant "to act voluntarily and intentionally with an improper motive or purpose to be influenced in connection with or rewarded for some business or transaction of Melrose." (Jury Instrs., ECF No. 39-8, at 1164:22–25.) Given that the jury found corrupt intent, there can be no serious dispute that the jury found that Kaufman had committed "an unfair, fraudulent, or wrongful act." *Poller*, 974 F. Supp. 2d at 227 (quotation marks omitted). Moreover, the jury made the finding that Kaufman acted corruptly as to each of the schemes on which Plaintiff moves for summary judgment, i.e., the Georgiton illegal gratuities scheme and the vendor scheme involving CBS. (*See* Verdict Form, ECF No. 39-9.) Given that the record makes clear that Kaufman's criminal jury decided the core issue of whether he acted *corruptly* with regard to each scheme, this Court finds that the question of whether Kaufman breached his fiduciary duty in connection with these schemes has been actually litigated and decided by a jury.

   2. *Factors Three and Four: Full and Fair Opportunity & Issue Necessary for Judgment*

   Although he has argued that application of *res judicata* is premature in light of his pending appeal, Kaufman has not identified any material facts in dispute on the questions of whether Kaufman's guilt on the charge of bank bribery was "actually litigated and actually decided," or whether Kaufman had a "full and fair opportunity

for litigation in the prior proceeding." *Gelb*, 798 F.2d at 44. The criminal proceeding also produced a "valid and final judgment on the merits," which was subsequently affirmed on appeal. *Namer*, 2004 WL 2199471, at *5; *see generally Kaufman*, 2021 WL 4084523, *aff'd*, 2023 WL 1871669, at *6. The procedural posture of the criminal case does not and should not preclude application of collateral estoppel for purposes of this motion.

Accordingly, the Court respectfully recommends that Kaufman should be estopped from disputing the material issues already adjudicated during his criminal case.

### B. Breach of Fiduciary Duty

The Court now turns to the claimed breaches of fiduciary duty and finds that Plaintiff has established that there are no material issues in dispute that would preclude a finding that Kaufman is liable on each of the asserted causes of action.[11]

As outlined *supra*, Plaintiff contends that Kaufman owed a fiduciary duty to Melrose and that he breached that duty (1) in his dealings with Georgiton and (2) by

---

[11] The Court notes as a threshold matter that Plaintiff's claims for breach of fiduciary duty were timely filed. Under New York law, no single statute of limitations governs breach of fiduciary duty claims. *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009). The substantive remedy sought typically determines the applicable statute of limitations: six years for suits seeking equitable relief, and three years for suits seeking only money damages. *Kaufman v. Cohen*, 760 N.Y.S.2d 157, 164 (N.Y. App. Div. 1st Dep't 2003). N.Y. C.P.L.R. § 213(7), however, provides a six-year statute of limitations for "an action by or on behalf of a corporation against a present or former director, officer or stockholder . . . to procure a judgment on the ground of fraud, or to enforce a liability, penalty or forfeiture." N.Y. C.P.L.R. § 213(7). Section 213(7) applies to all actions "with no differentiation between legal and equitable claims." *Roslyn Union Free Sch. Dist. v. Barkan*, 16 N.Y.3d 643, 650 (2011); *see also Whitney Holdings, Ltd. v. Givotovsky*, 988 F. Supp. 732, 742 (S.D.N.Y. 1997) ("Section 213(7) supplants all other statutes of limitation potentially applicable to a suit on a corporation's claim against its director, officer, or shareholder."). Credit unions like Melrose are "considered a

accepting luxury vacation packages from CBS Radio. Plaintiff further argues that

Melrose was damaged by paying compensation to Kaufman, a faithless servant, and is

entitled to damages as a matter of law under New York's faithless servant doctrine.

Plaintiff further avers that Kaufman's misconduct caused "significant losses" to

Melrose: Melrose suffered "losses from favorable interest rates on millions of dollars of

loans that Kaufman provided to Georgiton," "wasted [money] on unnecessary

advertising with CBS Radio;" and spent $2 million on a naming rights agreement that

had little to no value to Melrose. (Pl.'s Mem., ECF No. 39-3, at 14.) Notwithstanding

these arguments, Plaintiff does not rest its summary judgment argument on its claims of

actual damages, which may involve material questions of fact.

    1.  *Applicable Law*

    A breach of fiduciary duty claim under New York law has three essential

elements: (1) the existence of a fiduciary duty between the plaintiff and the defendant,

(2) breach by the defendant, and (3) damages resulting from the breach. *See Johnson*, 660

F.3d at 138; *Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 62 (E.D.N.Y. 2010).

---

corporation for purposes of New York fiduciary law." *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 165 (2d Cir. 2003). Plaintiff's claims, brought on behalf of Melrose, a credit union, would therefore ordinarily be subject to the six-year statute of limitations. Under the National Credit Union Administration ("NCUA") Extender Statute, 12 U.S.C. § 1787(b)(14)(B), however, Melrose's conservatorship extended the statute of limitations to the beginning date of the NCUAB's appointment as conservator. *See, e.g., Nat'l Credit Union Admin. Bd. v. HSBC Bank USA, Nat. Ass'n*, 117 F. Supp. 3d 392, 401–03 (S.D.N.Y. 2015). Application of the Extender Statute is mandatory and applies to "any action" brought by the NCUA. *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1229 (10th Cir. 2014).

    Here, the relevant period of alleged misconduct began in 2010 and ended on or about June 28, 2016. (*See generally* Compl., ECF No. 1.) The NCUAB was appointed as conservator for Melrose on February 10, 2017. (Pl.'s 56.1, ECF No. 39-2, ¶ 2; Def.'s 56.1, ECF No. 40-4, ¶ 2.) Plaintiff initiated this lawsuit on February 9, 2023, just within six years of the date on which the NCUAB became Melrose's conservator. (*See generally* Compl., ECF No. 1.) Plaintiff's claims are therefore timely.

As a general rule, "[a] fiduciary relationship exists . . . when one is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 306 (S.D.N.Y. 2014) (modification and quotation marks omitted). It is well established that, under New York law, officers and directors of a credit union owe a fiduciary duty to the credit union. *See Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 165 (2d Cir. 2003) (finding that a credit union was "considered a corporation for purposes of New York fiduciary law" and that "a director or officer of a corporation owes a fiduciary duty to the corporation" (citing N.Y. Bus. Corp. Law § 715(h))). Additionally, as discussed above, "[a] breach of fiduciary duty . . . 'occurs when a fiduciary commits an unfair, fraudulent, or wrongful act.'" *Poller,* 974 F. Supp. 2d at 227 (quoting *Beard Rsch.,* 8 A.3d at 602).

The final element of a breach of fiduciary duty claim is proof of damage suffered from the defendant's breach. *Schwartzco Enters. LLC,* 60 F. Supp. 3d at 352; *Yukos Cap. S.A.R.L. v. Feldman,* 977 F.3d 216, 241 (2d Cir. 2020). A breach of fiduciary duty claim is not enforceable until damages are sustained. *See Murphy v. Morlitz,* 751 F. App'x 28, 30 (2d Cir. 2018). Here, Plaintiff relies on New York's faithless servant doctrine to establish damages as a matter of law. (*See* Pl.'s Mem., ECF No. 39-3, at 11–15.) Significantly, as the Second Circuit has observed: "[C]ompensation paid by a principal to a faithless servant can satisfy the 'damage' element of a breach of fiduciary duty claim." *Feldman,* 977 F.3d at 240.

2. *Analysis*

For the reasons discussed above, Kaufman should be estopped from denying the issues already adjudicated in his criminal case. Kaufman contends, however, that he never committed a breach of fiduciary duty, arguing that the "alleged unlawful acts . . . were in fact done with the acquiescence and approval of several Board members," the

loans granted to Georgiton's companies were "consistent with Melrose policy or were secured by additional collateral" and "profited Melrose," and the vacations paid for by CBS Radio were "bona fide business travel." (Def.'s Opp'n, ECF No. 40, at 6–7.) Kaufman also asserts that his conduct did not cause Melrose to suffer any damages, and that the issue of Melrose's damages was not adjudicated during his trial. (*Id.* at 7–8.) Viewing the record in the light most favorable to Kaufman, these arguments are unpersuasive given the jury verdict and Kaufman's failure to advance specific facts, evidence, or necessary discovery that would create a genuine issue for trial as to liability. *See Matsushita*, 475 U.S. at 587 (requiring nonmoving party to provide "specific facts showing how there is a *genuine issue for trial*" (quoting Fed. R. Civ. P. 56(e)) (emphasis added in *Matsushita*)). As noted above and discussed in more detail below, Kaufman is not estopped from disputing the amount of the applicable damages.

    a.  Existence of Fiduciary Duty

There is no dispute that, as the Chief Executive Officer and Treasurer of Melrose, Kaufman owed the credit union a fiduciary duty. (*See* Def.'s 56.1, ECF No. 40-4, ¶ 3; Pl.'s Mem., ECF No. 39-3, at 5.) *See Gully*, 341 F.3d at 165.

    b.  Breach of Fiduciary Duty: Georgiton Relationship

As previously discussed, the Court respectfully recommends finding that Kaufman should be estopped from disputing that he breached his fiduciary duties in his dealings with Georgiton. (*See* Verdict Form, ECF No. 39-9.) In addition, even in the absence of estoppel, there is no material fact in dispute as to whether Kaufman's acceptance of illegal gratuities from one of Melrose's largest borrowers breached his fiduciary duties to Melrose. The summary judgment record, reviewed as a whole, details several key undisputed facts that support this conclusion. For example, Kaufman accepted from Georgiton rent-free lodging in the Jericho Residence between

2010 and 2013. (*See* Pl.'s 56.1, ECF No. 39-2, ¶¶ 10–12; Def.'s 56.1, ECF No. 40-4, ¶¶ 10–12, 16–17.) *See also Kaufman*, 2021 WL 4084523, at *3–6. During that same period of time, Kaufman approved millions of dollars in loans to Georgiton and his companies. (Pl.'s 56.1, ECF No. 39-2, ¶ 13; Def.'s 56.1, ECF No. 40-4, ¶ 13; *see also* Indictment, ECF No. 39-7, ¶ 7.) *See also Kaufman*, 2021 WL 4084523, at *4–5. Also while living at the Jericho Residence rent-free, Kaufman "presented the other members of Melrose's Board with a proposal under which Melrose would pay two million dollars" for a naming rights agreement between Melrose and one of Georgiton's companies for the Melrose Ballroom. (Pl.'s 56.1, ECF No. 39-2, ¶ 14; Def.'s 56.1, ECF No. 40-4, ¶ 14.) *See also Kaufman*, 2021 WL 4084523, at *28 (finding the naming rights agreement "favorable to Georgiton — and therefore indicative of Kaufman's corrupt intent — primarily because Kaufman single handedly advocated for it without Melrose's marketing director (who ultimately thought it was worth a fraction of the $2 million that Melrose paid for it)"). After that, in January 2013, Kaufman purchased the Jericho Residence from Georgiton for the same amount Georgiton had paid for it in 2010, financed by a $200,000 cosigned loan secured by Georgiton's Melrose share account, and a $240,000 loan from Georgiton on which Kaufman has never made any payments. (Pl.'s 56.1, ECF No. 39-2, ¶¶ 16–17; Def.'s 56.1, ECF No. 40-4, ¶¶ 16–17; Kaufman Decl., ECF No. 40-3, ¶ 35.)

These facts, which were fully adjudicated in the criminal proceeding, and as to which Kaufman has not proffered any specific evidence that creates a genuine issue for trial, are sufficient to establish Plaintiff's burden on summary judgment as to this element of their breach of fiduciary duty claim based on the illegal gratuities provided by Georgiton.

c.  Breach of Fiduciary Duty: CBS Radio

The Court also recommends that Plaintiff be granted summary judgment as to its claim that Kaufman breached his fiduciary duties to Melrose by accepting illegal gratuities from CBS Radio. As previously discussed, there is no factual dispute as to whether Kaufman was a fiduciary of Melrose. In addition, because Kaufman is estopped from disputing the essential allegations of his criminal convictions, there are no material facts in dispute as to whether his solicitation and acceptance of luxury vacations from CBS Radio constituted a breach of his fiduciary duties. *See Kaufman,* 2021 WL 4084523, at *6. Moreover, Kaufman has not identified any evidence that creates a genuine factual dispute as to whether Kaufman's solicitation and acceptance of paid trips from CBS Radio violated the Melrose Bank Bribery Policy and Employee Handbook. (*See* Pl.'s 56.1, ECF No. 39-2, ¶¶ 21–23; Def.'s 56.1, ECF No. 40-4, ¶¶ 21–23.[12]) *See also Kaufman,* 2021 WL 4084523, at *17 (finding that "ample evidence" demonstrated that Kaufman solicited and accepted vacations "worth thousands of dollars" in violation of Melrose's policies, and these actions were "neither in good faith nor in the normal course of Melrose's business"). Based on the totality of the summary judgment

---

[12] In his Rule 56.1 counterstatement and declaration, Kaufman stated that he accepted the CBS Radio trip offers "with full knowledge of the Board." (Def.'s 56.1, ECF No. 40-4, ¶ 21; Kaufman Decl., ECF No. 40-3, ¶¶ 45–52 (declaring that he took free trips from CBS Radio "[w]ith the full knowledge of the Board").) However, the Bank Bribery Policy did not require the Board to simply know of Kaufman's acceptance of the trips; rather, it required the Board to approve any potential gift made in connection with credit union business in writing, and as Plaintiff correctly notes, there is no evidence in the record indicating that such written approvals were ever made. (Bank Bribery Policy, ECF No. 39-6, at ECF p. 3; Pl.'s Reply, ECF No. 41, at 9.) Kaufman's self-serving claims that the Board knew of his transgressions, without any additional proof or evidence in the record, do not create a material factual dispute. *See Matsushita,* 475 U.S. at 586 (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Bryant v. Steele,* 462 F. Supp. 3d 249, 268 (E.D.N.Y. 2020) (granting summary judgment "where the only basis for a genuine dispute of material fact [wa]s the [Defendant's] self-serving testimony").

record, the Court respectfully recommends finding that Plaintiff has demonstrated that there is no material fact in dispute as to whether Kaufman breached his fiduciary duties by accepting gratuities from CBS Radio.

### d. Damages Under New York's Faithless Servant Doctrine

As mentioned above, Plaintiff contends that it was damaged by paying a salary to Kaufman, a faithless servant. Kaufman's main argument in opposition to Plaintiff's motion for summary judgment on its breach of fiduciary duty claims is that factual questions exist as to whether Melrose suffered damages as a result of Kaufman's misconduct. (Def.'s Opp'n, ECF No. 40, at 11–18.) *See also Tyco Int'l Ltd. v. Kozlowski*, 756 F. Supp. 2d 553, 561–62 (S.D.N.Y. 2010) (finding that defendant's criminal convictions only established liability as to breach of fiduciary duty, but damages would need adjudication in the civil proceeding). The record on summary judgment here establishes that Plaintiff suffered damages as a matter of law.

First, as set forth *supra*, the Second Circuit has squarely held that "compensation paid by a principal to a faithless servant can satisfy the 'damage' element of a breach of fiduciary duty claim." *Feldman*, 977 F.3d at 240. The Second Circuit has also observed that "New York law with respect to disloyal or faithless performance of employment duties is grounded in the law of agency, and has developed for well over a century." *Phansalkar v. Anderson Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (citing *Murray v. Beard*, 102 N.Y. 505 (1886).) The *Phansalkar* court further found that "[i]t does not 'make any difference that the services were beneficial to the principal, or that the principal suffered *no provable damage* as a result of the breach of fidelity by the agent.'" *Phansalkar*, 344 F.3d at 200 (quoting *Feiger v. Iral Jewelry, Ltd.*, 41 N.Y.2d 928, 928–29 (1977) (emphasis added)). On summary judgment, under that standard, Plaintiff need not prove specific, quantifiable damages because there is no dispute that Melrose paid

Kaufman a substantial salary between 2011 and 2016. Moreover, for the reasons discussed above, Kaufman has not established that there are any material facts in dispute on the questions of whether he "owe[d] a duty of fidelity" to Melrose and was "faithless in the performance of his services" by soliciting and accepting illegal gratuities from Georgiton and CBS Radio. *Id.* (citations omitted). Accordingly, the Court respectfully recommends finding that Kaufman was a faithless servant as a matter of law. *See id.*

   The Court is cognizant that Kaufman insists that the credit union was not harmed by his behavior.[13] (Def.'s Opp'n, ECF No. 40, at 13–19.) In its reply brief, Plaintiff reiterates that it is not seeking actual or compensatory damages on summary judgment and, rather, contends that proof of compensation paid to a faithless servant is sufficient to establish the damages element of a breach of a fiduciary duty claim. (Pl.'s Reply, ECF No. 41, at 3–5.) Plaintiff is correct. *See Feldman*, 977 F.3d at 241 ("When a principal seeks to recover compensation from an unfaithful servant, the principal need not allege damage other than the compensation it paid the servant to satisfy the 'damage' element of a claim for breach of fiduciary duty under New York law.").

_____

   [13] There is no question that Plaintiff contends that Melrose suffered "significant out-of-pocket losses" and that it was harmed by Kaufman's misconduct. (Pl.'s Mem., ECF No. 39-3, at 11.) For example, Plaintiff avers that Kaufman's approval of new loans and refinancing of preexisting loans for Georgiton and his companies provided favorable loan terms at the expense of Melrose's financial earnings. (Compl., ECF No. 1, ¶ 100; *see also* Indictment, ECF No. 39-7, ¶ 7.) *Cf. Kaufman*, 2021 WL 4084523, at *4–5. Kaufman also caused the credit union to pay $2 million for a naming rights agreement which "had no value to Melrose," for which he was ordered to pay restitution. *Kaufman*, 2023 WL 1871669, at *5 (affirming the restitution order). Whether Plaintiff suffered actual harm is irrelevant as to the pending motion for partial summary judgment as discussed *supra*. For this reason, the Court need not reach the question of whether there are any material facts in dispute as to whether Plaintiff suffered compensatory or actual damages.

Kaufman also argues that Plaintiff is barred from asserting any damages under the faithless servant doctrine because Plaintiff did not include a faithless servant cause of action in the complaint. (Def.'s Opp'n, ECF No. 40, at 2.) It is true, as Kaufman notes, that some courts have treated breach of fiduciary duty and faithless servant claims as distinct. *See, e.g., Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 524–25 (S.D.N.Y. 2011). Courts often differentiate between the two causes of action, however, when a plaintiff asserts both and seeks different relief under each claim. *See Plaza Motors of Brooklyn, Inc. v. Rivera*, No. 19-CV-6336 (LDH), 2020 WL 9814102, at *4 (E.D.N.Y. Sept. 17, 2020) (finding breach of fiduciary duty and faithless servant claims were not duplicative because plaintiffs sought additional relief pursuant to the faithless servant claim), *report and recommendation adopted*, Nov. 30, 2020 ECF Order Adopting R. & R. More commonly, courts treat the faithless servant doctrine as an "additional mechanism for relief" under breach of fiduciary duty and analyze them as a single claim. *Webb v. Robert Lewis Rosen Assocs., Ltd.*, No. 03-CV-4275 (HB), 2003 WL 23018792, at *6 (S.D.N.Y. Dec. 23, 2003); *Feldman*, 977 F.3d at 242 (collecting cases); *see, e.g., Regency NYC, Inc. v. Atkinson*, No. 23-CV-5479 (JGLC), 2024 WL 4337486, at *5 (S.D.N.Y. Sept. 27, 2024); *FRHUEB, Inc. v. Abdala*, No. 21-CV-7395 (MMG) (KHP), 2024 WL 3492896, at *10 (S.D.N.Y. June 28, 2024) (faithless servant doctrine "can be asserted under two different theories," one of which is breach of fiduciary duty). Significantly, because the faithless servant cause of action is "based on theories such as breach of fiduciary duty and conversion," it can be used to support a party's claim for breach of

fiduciary duty even when not explicitly pled in the complaint. *Tyco Int'l Ltd. v. Kozkowski*, No. 02-CV-7317 (TPG), 2012 WL 763553, at *1 (S.D.N.Y. Mar. 9, 2012).[14]

\* \* \* \* \*

For all of these reasons, the Court finds that Plaintiff has established that there are no material facts in dispute on the question of Kaufman's liability for the breach of fiduciary claims relating to illegal gratuities received from Georgiton and CBS Radio (causes of action two and three). Accordingly, Plaintiff is entitled to judgment as a matter of law as to Kaufman's liability on these claims.

## III. Remedies

Plaintiff seeks several forms of relief. First, Plaintiff requests a money judgment in an amount equal to Kaufman's compensation for the period from February 10, 2011, until his termination in 2016, under the faithless servant doctrine, to include both his salary for the relevant period, $7,323,557.15, and the cash value of a life insurance policy Melrose purchased on Kaufman's behalf (hereinafter the "Kaufman policy"), which had a cash value of $2,568,127.25 in March 2024. (Pl.'s Mem., ECF No. 39-3, at 16–18.) Second, Plaintiff seeks an equitable order requiring forfeiture of Kaufman's interest in and control over the Kaufman policy, which comprised part of his compensation, as a

---

[14] The Court notes that the defendant's name in *Kozkowski*, 2012 WL 763553, appears to have been Kozlowski, but that it is misreported in the case caption. Here, the Court refers to the defendant in that case as Kozlowski, but includes the citation as reported. Defendant argues that *Kozkowski* is inapposite because the district court declined to resolve plaintiff's faithless servant doctrine claim on summary judgment and Kozlowski had a more significant criminal record than Kaufman. (Def.'s Opp'n, ECF No. 40, at 20.) Neither argument is availing. The court in *Kozkowski* declined to resolve the faithless servant claims on summary judgment because its prior opinion did not make sufficient findings as to the actual amount of the defendant's compensation, which is not an issue here. *Kozkowski*, 2012 WL 763553, at *2. Further, the breadth and depth of Kozlowski's criminal convictions as compared to Kaufman's are not relevant to this Court's determination of whether Kaufman's compensation can be considered damages under the faithless servant doctrine.

form of restitution. (*See id.* at 18–21.) In the alternative, Plaintiff requests permanent injunctive relief to enforce the recovery of Kaufman's compensation and forfeiture of Kaufman's interest in and control over the Kaufman policy. (*Id.* at 21–24.)

Kaufman argues that the faithless servant doctrine is inapplicable to damages, but even if it did apply, Plaintiff is not entitled to Kaufman's salary. (Def.'s Opp'n, ECF No. 40, at 19–20.) Kaufman further argues that there are disputed issues of material fact as to whether (1) Plaintiff has met the standard for an award of full-compensation damages under the faithless servant doctrine, (2) Plaintiff waived its right to disgorgement, and (3) how much, if any, of Kaufman's compensation should be forfeited. (*Id.* at 23–27.) As to Plaintiff's request for a restitution order for the insurance policy, Kaufman argues that there is no basis to grant restitution of the insurance policy that was first purchased in 2006, long before Kaufman engaged in any alleged misconduct. (*Id.* at 27.) Finally, Kaufman contends that, should Plaintiff be awarded any damages, the award amount should be set off against the $2 million restitution order from the criminal case. (*Id.* at 28.)

For the reasons set forth below, the Court respectfully recommends finding that Plaintiff is entitled to a money judgment in the amount of Kaufman's compensation and an equitable order requiring Kaufman to relinquish his interest in the Kaufman policy to Plaintiff so as to permit Plaintiff to recover up to the amount of the money judgment in the event that the judgment is not satisfied by Kaufman another way. As discussed below, the Court does not find that Plaintiff has established its entitlement to a money judgment for the total value of the policy or the total divestiture of Kaufman's interest in the Kaufman policy in addition to a money judgment for his compensation because there are material factual issues in dispute as to the appropriate monetary damages that could be awarded on the basis of the policy. In addition, the Court respectfully

recommends denying Plaintiff's request for a permanent injunction on the present record.

**A. Forfeiture of Compensation Under the Faithless Servant Doctrine**

1. *Applicable Law*

Under New York state law, courts have taken two different approaches to "determine whether an employee's misbehavior warrants forfeiture" of the employee's compensation. *Phansalkar*, 344 F.3d at 201. One approach, referred to as the *Turner* standard, is derived from an 1885 case that observed "in *dictum* that a disloyal employee forfeits promised compensation only when the 'misconduct and unfaithfulness . . . substantially violates the contract of service.'" *Id.* (quoting *Turner v. Konwenhoven*, 100 N.Y. 115, 120 (1885)); *see also Musico v. Champion Credit. Corp.*, 764 F.2d 102, 113 (2d Cir. 1985) (collecting cases that limit forfeiture to the period in which the servant was unfaithful).

In enunciating the second approach, referred to as the *Murray* standard, the New York Court of Appeals observed in 1886 that if an agent "acts adversely to his employer in any part of the transaction, or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment, it amounts to such a fraud upon the principal, as to forfeit any right to compensation for services." *Murray*, 102 N.Y. at 508; *see also Phansalkar*, 344 F.3d at 202, 204. "Thus, while the *Turner* standard appears to condition the propriety of any amount of forfeiture of an agent's compensation for services on a threshold showing that an agent's disloyalty constituted a 'substantial violation' of the terms of his employment, the *Murray* doctrine appears more absolute, suggesting that forfeiture is warranted in all cases of disloyalty." *Design Strategies, Inc. v. Davis*, 384 F. Supp. 2d 649, 661 (S.D.N.Y. 2005). Accordingly, under the faithless servant doctrine, a defendant "'who owes a duty of fidelity to a principal and

who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary.'" *Phansalkar*, 344 F.3d at 200 (quoting *Feiger*, 41 N.Y.2d at 928); *see also Shoreline Aviation, Inc. v. Sound Aircraft Flight Enters., Inc.*, No. 20-CV-2161 (NJC) (SIL), 2024 WL 4040352, at *12 (E.D.N.Y. Aug. 12, 2024) (collecting cases).

    2. *Analysis*

    Under either the *Turner* or *Murray* standard, Kaufman's disloyalty was "substantial." *Phansalkar*, 344 F.3d at 203 (quotation marks omitted). This conclusion is warranted based on the uncontroverted evidence that Kaufman "act[ed] adversely to his employer" and "omit[ted] to disclose" clear conflicts that would "naturally influence his conduct" as he engaged in Melrose business while, *inter alia,* accepting illegal gratuities from Georgiton in the form of hundreds of thousands of dollars in loans, living rent-free in a property Georgiton purchased for Kaufman's benefit, signing over 50 checks using Georgiton's name, and accepting illegal gratuities from CBS Radio, a Melrose vendor. *Murray*, 102 N.Y. at 508; *see Design Strategies,* 384 F. Supp. 2d at 662. Kaufman undertook these acts in violation of two separate Melrose policies while serving as Chief Executive Officer and Treasurer of Melrose, with a clear fiduciary obligation to the credit union. In addition, while accepting gratuities from Georgiton, he advocated for and approved loan agreements and transactions for Georgiton and his companies. Kaufman also solicited and accepted numerous vacation packages from CBS Radio, again in violation of two explicit credit union policies prohibiting officials from undisclosed acceptance of things of value. Accordingly, the record amply shows that Kaufman's misconduct was not limited to a "single act." *Design Strategies,* 384 F. Supp. 2d at 662. Rather, in light of Kaufman's repeated and continuous misconduct, the Court concludes that Plaintiff has established that there are no material facts in dispute on the

question of whether Kaufman's conduct was substantially adverse and unfaithful to Melrose.[15] Even applying the more stringent *Turner* standard, the Court readily finds that Kaufman's disloyalty "rose to the level of a pervasive pattern of disloyalty." *Id.* at 664.

Here, Plaintiff seeks the forfeiture of Kaufman's compensation from February 10, 2011, through his termination on or about June 28, 2016, or for the "relevant period" of

---

[15] Kaufman argues that there are disputed issues of fact as to whether the standard for disgorgement of salary has been met, arguing that alleged misconduct must "permeate" an employee's service to warrant disgorgement under the faithless servant doctrine and that whether such conduct permeates the relationship is a question of fact. (Def.'s Opp'n, ECF No. 40, at 21.) In support of his position, Kaufman discusses *Phansalkar* and *Feldman*, and he cites three additional cases: *Sanders v. Madison Square Garden, LP.*, No. 06-CV-589 (GEL), 2007 WL 1933933 (S.D.N.Y. July 2, 2007), *PRCM Advisers LLC v. Two Harbors Inv. Corp.*, No. 20-CV-5649 (LAK), 2023 WL 5152288 (S.D.N.Y. Aug. 10, 2023), and *Hamlet at Willow Creek Dev. Co., LLC v. Ne. Land Dev. Corp.*, 907 N.Y.S.2d 437 (Sup. Ct. Nassau Cnty. 2010) ("*Hamlet at Willow Creek*"). None of these cases support the position that summary judgment cannot be granted on a faithless servant claim where there are no material issues in dispute as to the scope and breadth of a servant's disloyal acts. In *Sanders*, the court concluded that the faithless servant doctrine did not apply at all because the misconduct alleged to be faithless was that the employee "was either operating an outside business or that she committed tax fraud while employed," finding that such activities were "unrelated to employment" and did not form a basis for a faithless servant claim in the absence of allegations that "such business or behavior adversely affect[ed] the employee's job performance." *Sanders*, 2007 WL 1933933, at *4. *PRCM Advisers LLC* discussed the elements of the faithless servant doctrine in the context of a motion for judgment on the pleadings, finding that, based on the pleadings there, the claim could go forward. 2023 WL 5152288, at *10. The facts in *Hamlet at Willow Creek* involved circumstances where a party sought recission of a contract due to the over-excavation of a property that resulted in the contractor removing over 200,000 cubic yards of clean fill, but on the record before it, the court could not determine whether that was due to "intentional misconduct, involving a regular course of conduct, [that was] detrimental to the principal." 907 N.Y.S.2d 437, at *7. All of these cases are readily distinguishable from the circumstances presented here, where Kaufman, a fiduciary in a very sensitive position of trust at a financial institution, operated under undisclosed conflicts of interest for years due to his substantial financial entanglement with an important client of the financial institution, while also corruptly accepting illegal gratuities from vendors. On the present record, there is no serious factual dispute as to whether his misconduct was substantial and lengthy; rather, Kaufman's behavior constituted "systematic and repeated misconduct over a substantial period of time which exhibits fundamental immorality evincing a high degree of disloyalty." *Id.* at *4.

breach.[16] (Pl.'s Mem., ECF No. 39-3, at 12, 17.) There is no factual dispute as to the total amount of compensation that Kaufman received between 2011 and 2016; Kaufman's total compensation for this period was $7,323,557.15. (See Pl.'s 56.1, ECF No. 39-2, ¶¶ 27–32 (detailing $7,323,557.15 in compensation between February 10, 2011, and 2016); Def.'s 56.1, ECF No. 40-4, ¶¶ 27–32; Pl.'s Mem., ECF No. 39-3, at 17.) Kaufman argues that Plaintiff is not entitled to recovery of his full compensation because it has not sufficiently demonstrated that he was a faithless servant "during each pay period between 2011 and 2016." (Def.'s Opp'n, ECF No. 40, at 26.) He suggests that further discovery is required to ascertain in which pay periods Kaufman committed misconduct.[17] (Id.) The Second Circuit has held, however, that "New York's faithless servant doctrine requires [a defendant] to forfeit all compensation received *after his first disloyal act.*" *Phansalkar*, 344 F.3d at 188 (emphasis added). Given that Kaufman received a yearly salary and bonus, rather than compensation based on task-by-task service, the bulk of the available precedent weighs against his argument. *See supra* note 17; *Design Strategies*, 384 F. Supp. 2d at 669 (stating that "the Court understands *Phansalkar* to

---

[16] Plaintiff has alleged that Kaufman's misconduct began in 2010 but seeks damages for the period beginning on February 10, 2011; given the six-year statute of limitations, Plaintiff could not recover compensation from before the February 10, 2011 date. *See* N.Y. C.P.L.R. § 213(7); *see supra* note 11.

[17] Kaufman suggests that there are disputed issues of fact as to which components of Kaufman's compensation package should be forfeited, and cites *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136 (2d Cir. 1998). (Def.'s Opp'n, ECF No. 40, at 26.) *Sequa*, as well as *Musico*, 764 F.2d 102, have suggested that forfeiture may be calculated using an "apportionment" approach, which allows the employee "to keep compensation for the *tasks* he performed loyally, during the time period in which he was disloyal in other work." *Phansalkar*, 344 F.3d at 205 (alteration in original). This "task-based apportionment" is appropriate for situations in which the agent was paid on a task-by-task basis, the agent did not engage in misconduct for every task, and his disloyalty in some tasks did not affect the other tasks in which he was loyal. *Design Strategies*, 364 F. Supp. 2d at 664–65 (citing *Phansalkar*, 344 F.3d at 205). Where the employment agreement is one of general compensation, forfeiture of compensation should not be limited in this manner. *Id.*

require that forfeiture be broken down in accordance with the compensation structure provided for in the relevant employment agreement, but not further").

The Court recommends finding that Plaintiff is entitled to forfeiture of Kaufman's full compensation paid during his period of disloyalty, i.e., between 2011 and 2016. Where an employee's compensation agreement dictates that he is paid a salary and his compensation is not limited "to specific amounts paid for the completion of specific tasks," courts award forfeiture of general compensation. *Phansalkar*, 344 F.3d at 208. Indeed, "New York's lower courts have endorsed limiting forfeiture to compensation paid *during the time period* of disloyalty." *Design Strategies*, 364 F. Supp. 2d at 664 (quoting *Phansalkar*, 344 F.3d at 205) (alteration in original); *Stanley v. Skowron*, 989 F. Supp. 2d 356, 363 (S.D.N.Y. 2013).

In a further effort to forestall entry of judgment against him, Kaufman also contends that there is a factual dispute as to whether Plaintiff waived its right to seek forfeiture of his compensation under the faithless servant doctrine. (Def.'s Opp'n, ECF No. 40, at 23–25). "'To establish waiver under New York law one must show that the party charged with waiver relinquished a right with both knowledge of the existence of the right and an intention to relinquish it.'" *Christian Dior-New York, Inc. v. Koret, Inc.*, 792 F.2d 34, 40 (2d Cir. 1986) (quoting *Voest-Alpine Int'l Corp. v. Chase Manhattan Bank, N.A.*, 707 F.2d 680, 685 (2d Cir 1983)). While Kaufman is correct that waiver is a question of fact, *see Supreme Showroom, Inc. v. Branded Apparel Grp. LLC*, No. 16-CV-5211 (PAE), 2018 WL 3148357, at *12 (S.D.N.Y. June 27, 2018), Kaufman has not identified any evidence that would illustrate a genuine factual dispute as to whether Melrose waived its right to forfeiture. As discussed *supra* note 12, beyond his self-serving declaration, Kaufman has identified no facts or evidence in the record to support his vague assertions that Board members knew about or ratified his misconduct. *See Bryant v.*

*Steele*, 462 F. Supp. 3d 249, 259 (E.D.N.Y. 2020) ("Courts routinely reject self-serving affidavits as bases for establishing a genuine issue of fact."). Kaufman's declaration is also inconsistent with his prior testimony. (*Compare* Kaufman Decl., ECF No. 40-3, ¶¶ 28, 36 (stating that "Members of the Board at Melrose knew about" the Jericho Residence arrangement and purchase), *with* Kaufman Dep. Tr., ECF No. 39-4, 244:2–245:11, 248:23–249:5, 273:12–273:18 (confirming the Board was not told that Georgiton cosigned the $200,000 loan and gave Kaufman an additional $240,000 loan, nor was it informed that Kaufman was living in the Jericho Residence without paying rent while approving Melrose loans for Georgiton and his companies).) *See also, e.g., Kaufman*, 2021 WL 4084523, at *6 ("Kaufman did not disclose to Melrose's board that he financed his purchase of the Jericho Residence with loans from Georgiton."). Moreover, even if some Board members did have some knowledge of Kaufman's dealings, there is no indication in the record that the Melrose Board or any of its members were fully aware of the conflicts of interest inherent in Kaufman's acceptance of the gratuities, nor does the record show that the Board formally approved or intended to "relinquish" any rights to forfeiture for Kaufman's misconduct.[18] *Christian Dior-New York, Inc.*, 792 F.2d at 40; *see generally Matsushita*, 475 U.S. at 586 (observing that "metaphysical doubt as to the

---

[18] As discussed *supra* note 12, written approvals by the Board were required for a Melrose official to accept gifts under Melrose's Bank Bribery Policy, and there are no written approvals for Kaufman's conduct in the record. (Bank Bribery Policy, ECF No. 39-6; Pl.'s Reply, ECF No. 41, at 9–12.) Kaufman was directed to identify any outstanding discovery needed "with specificity" and his opposition does not address the absence of written approvals in the record. (*See* Apr. 1, 2024 ECF Order.) Having reviewed the record in the light most favorable to the non-movant, Kaufman has failed to demonstrate that there is a material factual dispute as to whether the Board ever ratified his acceptance of illegal gratuities from Georgiton or CBS Radio with full knowledge of Kaufman's deceit.

material facts" is insufficient to create a serious factual dispute). Accordingly, Kaufman has failed to identify any evidence that could reasonably support his claim of waiver.

Kaufman additionally argues that, to the extent the Court does order forfeiture, it should be set off against the $2 million restitution ordered in the criminal case. (Def.'s Opp'n, ECF No. 40, at 28.) Forfeiture of compensation under the faithless servant doctrine, however, falls under a theory of recovery entirely separate from restitution for actual damages flowing from a different (albeit related) criminal scheme. *See Kozkowski,* 2012 WL 763553, at *1. In addition, because the Melrose Ballroom naming rights scheme was just one of many acts in Kaufman's multi-year faithless service, the Court does not recommend offsetting the money judgment by the amount of Judge Kaplan's restitution order. That order was entered in an effort to make Melrose whole as a result of actual damages of $2 million lost in connection with the worthless naming rights deal. (*See* Restitution Order, ECF No. 39-10, at 1, 5 (ordering Kaufman to "pay restitution . . . to the victim of the offense charged in Count Two" and listing the NCUAB as the victim).) *See Kaufman,* 2023 WL 1871669, at *5–6 (affirming the restitution order for "the fees [Kaufman] caused Melrose to pay for the naming rights to the Melrose Ballroom"). As a matter of fairness, damages that were previously awarded as restitution should be offset, but here, where the criminal restitution ordered and the civil forfeiture sought remedy different harms, there is no factual basis for the offset Kaufman requests. *See, e.g., Stanley,* 989 F. Supp. 2d at 358, 364 (ordering that the defendant "must forfeit the full measure of compensation he received" during the period of his disloyalty, offset by 20% of compensation, which was the "amount ordered to be paid as restitution in the criminal proceeding"). There are ample facts in record, separate and apart from the ballroom scheme, that establish Kaufman's substantial misconduct over the course of

the relevant period of his employment. Kaufman's request for a $2 million offset should be denied.

For all of the reasons discussed above, Plaintiff has sufficiently demonstrated that there are no material facts in dispute as to whether Kaufman committed substantial breaches of his fiduciary duties between 2011 and 2016.[19] (*See generally* Compl., ECF No. 1; Pl.'s 56.1, ECF No. 39-2.) Therefore, the Court respectfully recommends that Plaintiff be awarded a judgment in the amount of Kaufman's compensation, i.e., $7,323,557.15.

**B. Remedies Against the Kaufman Insurance Policy**

In addition to Kaufman's compensation, Plaintiff seeks to have the full value of the Kaufman insurance policy included in the judgment and requests that the Court enter equitable relief so as to effectively forfeit all of Kaufman's interests in the policy. Specifically, Plaintiff requests that the Court provide it "full control over if or when the policy is redeemed for cash and specify that all of the proceeds (after payment of MassMutual's loans) are fully payable to the NCUAB." (Pl.'s Mem., ECF No. 39-3, at 19.)

A party may seek recovery of compensation or benefits from a faithless servant as "a claim in equity." *See Shamrock Power Sales, LLC v. Scherer*, No. 12-CV-8959 (KMK) (JCM), 2016 WL 6102370, at *6 (S.D.N.Y. Oct. 28, 2016) (finding restitution of

---

[19] In his opposition, Kaufman claims that Plaintiff did not provide any allegations for misconduct occurring after 2013. (Def.'s Opp'n, ECF No. 40, at 26.) Given that a faithless servant's compensation can be forfeited after his first disloyal act, *Phansalkar*, 344 F.3d at 188, Plaintiff is entitled to forfeiture from the moment of misconduct onwards. Moreover, at the time he was criminally charged in 2019, Kaufman still had an interest in the Jericho Residence that he purchased with Georgiton's assistance. (*See* Furman Decl., ECF No. 39-1, ¶ 20 (discussing how the Jericho Residence is the subject of forfeiture in the criminal case).) *See also Kaufman*, 2023 WL 1871669, at *6 (discussing forfeiture of the Jericho Residence). Kaufman has also admitted that, as of June 21, 2024, he had not made any payments towards the $240,000 personal loan from Georgiton. (*See* Kaufman Decl., ECF No. 40-3, ¶ 35.) There is therefore evidence of Kaufman's continuing misconduct well past 2013.

compensation paid to defendant "equitable in nature"). Further, a court may order equitable relief when "the damages sought are in the nature of restitution, as in actions for disgorgement of improper profits or money wrongfully withheld." *Swan Brewery Co. v. United States Tr. Co.*, 143 F.R.D. 36, 41 (S.D.N.Y. 1992).

Kaufman and Melrose entered into the Kaufman policy in 2006 and extended it in 2013. (Pl.'s 56.1, ECF No. 39-2, ¶¶ 33–34; Def.'s 56.1, ECF No. 40-4, ¶¶ 33–34.) In total, between 2006 and 2016, Melrose paid $1,500,000 in premiums into the policy. (Pl.'s 56.1, ECF No. 39-2, ¶ 34; Def.'s 56.1, ECF No. 40-4, ¶ 34.) Plaintiff alleges that, after the policy had been in place for eight years, Kaufman was permitted, with Melrose Board's approval, to secure a loan against the cash value of the policy. (Compl., ECF No. 1, ¶ 29.) Between 2014 and 2016, Kaufman applied for and received a number of loans by borrowing against the policy, subsequently borrowing up to the full cash value of the policy. (Compl., ECF No. ¶¶ 33–34, 38; Pl.'s 56.1, ECF No. 39-2, ¶ 35; Def.'s 56.1, ECF No. 40-4, ¶ 35.)

Plaintiff asserts that, had Kaufman not borrowed against the policy, the cash redemption value of the policy was $2,568,127.25 and the death benefit was $4,258,847.00 as of March 2024. (Pl.'s 56.1, ECF No. 39-2, ¶ 35.) Because Kaufman borrowed against the full cash value of the policy, Plaintiff alleges that it would receive $1,500,000 in the event of Kaufman's death (with the remaining amount going to Kaufman's beneficiaries), but only $271,156.80 if the policy were redeemed for cash

today.[20] (*Id.*) Kaufman opposes entry of any relief predicated on the policy on the ground that the insurance agreement was entered into before Kaufman's alleged misconduct began. (Def.'s Opp'n, ECF No. 40, at 27.)

As Plaintiff suggests, courts have ordered forfeiture of certain benefits previously given to a faithless servant. Typically, these benefits were forfeited because they either related to the misconduct or were received after the defendant began his period of disloyalty. *See, e.g., Phansalkar*, 344 F.3d at 210–11 (finding plaintiff is entitled to defendant's interests in various investments); *Kleeberg v. Eber*, 665 F. Supp. 3d 543, 603 (S.D.N.Y. 2023) (ordering disgorgement of defendant's compensation but not his pension benefits, which "accrued substantially before [defendant's] disloyalty began"); *Kozlowski*, 756 F. Supp. 2d at 556, 564 (defendant ordered to forfeit life insurance benefits which were entered into after defendant's misconduct began). Here, Kaufman and Melrose entered into the policy in 2006, several years before Kaufman committed his first demonstrated act of disloyalty. An employer is entitled to any compensation

---

[20] Plaintiff alleges the cash redemption value, death benefit, and cash value of the Kaufman policy as of March 2024 in its Rule 56.1 statement filed with its motion for summary judgment, but cites in support of those figures a MassMutual statement that is dated March 14, 2023. (*See* Pl.'s 56.1, ECF No. 39-2, ¶ 35; MassMutual Statement, ECF No. 39-25.) The 2023 MassMutual Statement does not include the values alleged in Plaintiff's Rule 56.1 statement. Plaintiff previously filed a Rule 56.1 statement as part of its February 1, 2024 letter motion for a pre-motion conference; this statement included a cash redemption value, death benefit, and cash value for the Kaufman policy as of March 2023. (*See* Letter Mot. for Pre-Motion Conf., ECF No. 33; Pl.'s Rule 56.1 Statement, ECF No. 33-1, ¶ 35 (alleging that the policy's cash redemption value was $2,435,510.51 and the death benefit was $4,134,361.00, and the cash value if Plaintiff were to redeem the policy as of the filing of the Rule 56.1 statement was $247,919.61).) In his Rule 56.1 counterstatement, Kaufman admits that "the records referenced reflect the valuation" and denies "having knowledge as to what NCUAB might receive if the policy were redeemed for cash." (Def.'s 56.1, ECF No. 40-4, ¶ 35.) Because the Court respectfully recommends that Plaintiff be provided with the ability to recover whatever value the policy holds in the event that Kaufman cannot satisfy the judgment, but declines to order recovery of a specific monetary value for the policy, any lack of clarity as to the policy's value does not create a material factual dispute that would preclude summary judgment.

provided to a faithless servant after his disloyalty began, *see, e.g., Phansalkar,* 344 F.3d at 200, so Plaintiff is likely entitled to at least some portion of the Kaufman policy, particularly in the event that Kaufman cannot pay a money judgment in the amount of his compensation.[21]

The Court is not, however, able to determine, on the current factual record, whether the value from the insurance policy should be partially apportioned for the time period in which Kaufman was a faithless servant, and how best to calculate that apportionment for inclusion in a money judgment. Similarly, Plaintiff has not provided a basis on which the Court can apportion the value of the policy so as to determine what amount of the policy value should be added to a money judgment. Notwithstanding these gaps in the record, the Court recommends the entry of an equitable relief order providing Plaintiff with the ability to recover whatever value the policy holds up to the amount of the money judgment.

## C. Permanent Injunction

Finally, Plaintiff requests an order in the form of a permanent injunction. Plaintiff contends that the NCUAB is entitled to injunctive relief pursuant to 12 U.S.C. § 1787(b)(2)(G), and that an injunction is proper for the recovery of improperly held or ill-gotten assets sought in equity, such as the forfeiture of compensation under the faithless servant doctrine. (Pl.'s Mem., ECF No. 39-3, at 21.) Plaintiff also avers that it

---

[21] Plaintiff suggests that a money judgment will be insufficient if Kaufman is insolvent. (*See* Pl.'s Mem., ECF No. 39-3, at 23; *see also* Furman Decl., ECF No. 39-1, ¶ 20 (noting that the government in the criminal case is seeking to collect the $2 million restitution from the Jericho Residence and Kaufman's retirement account).) Plaintiff has stated that it is "unaware of assets [other than those assets which the government is targeting to fulfill criminal restitution] of which Kaufman might have from which to collect any judgment entered in this litigation other than Kaufman's life insurance policy." (Furman Decl., ECF No. 39-1, ¶ 21.) On the current record, the Court is unable to determine the extent to which Kaufman's insolvency impacts his ability to satisfy a money judgment.

has met all the requirements for a permanent injunction, asserting that Plaintiff has demonstrated actual success on the merits of the litigation, Kaufman cannot argue that the permanent injunction would cause him hardship when the injunction would take away a benefit to which he is not entitled, and enforcement of the faithless servant doctrine benefits the public interest. (*Id.* at 22–23.) *See Grp. One Ltd. v. GTE GmbH*, 625 F. Supp. 3d 28, 70 (E.D.N.Y. 2022). Plaintiff further states that it is congressionally relieved of demonstrating irreparable injury under 12 U.S.C. § 1787(b)(2)(H)(i), and where irreparable harm is established, it need not have to show that remedies available at law are inadequate to compensate for the injury, though Plaintiff suggests that it would lack a remedy at law if Kaufman is unable to satisfy a money judgment. (*See id.*) *See also* 12 U.S.C. § 1787(b)(2)(H)(i) ("Rule 65 of the Federal Rules of Civil Procedure shall apply . . . without regard to the requirement of such rule that the applicant show that the injury, loss, or damage is irreparable and immediate.").

The Court respectfully recommends denying Plaintiff's request for a permanent injunction on the present record. Plaintiff has not established its entitlement to a permanent injunction under 12 U.S.C. § 1787(b)(2)(G). That statute provides that "any court of competent jurisdiction may, at the request of the Board . . . issue an order in accordance with Rule 65 of the Federal Rules of Civil Procedure." 12 U.S.C. § 1787(b)(2)(G). The plain terms of Rule 65(d) require that any injunction or restraining order "state its terms specifically," while here, on the present record, it is unclear what precise relief Plaintiff seeks in its request for a permanent injunction, and whether that relief could go beyond the Court's recommendation that the NCUAB be granted a money judgment in the amount of Kaufman's compensation and a right to recover its judgment against the value of the Kaufman insurance policy. Fed. R. Civ. P. 65(d)(1)(B). Further, Plaintiff has not established, at this juncture, that there are no material issues of

fact in dispute as to other aspects of their proposed relief, largely because what they seek is not clear.

For the reasons stated above, and in light of the aforementioned recommendations that a judgment be entered (1) awarding Plaintiff the full amount of Kaufman's compensation and (2) ordering divestiture of Kaufman's interest in the Kaufman insurance policy, up to the amount of the money judgment in the event that the judgment is not fully satisfied, the Court respectfully recommends that the request for a permanent injunction should be denied, without prejudice.

## CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff is entitled to judgment as a matter of law as to its breach of fiduciary duty claims against Kaufman. Therefore, the Court respectfully recommends granting in part Plaintiff's partial motion for summary judgment. The Court further recommends entry of judgment in favor of Plaintiff in the amount of $7,323,557.15. In addition, the Court respectfully recommends entry of an equitable order divesting Kaufman of his interest in the Kaufman insurance policy, up to the amount of the money judgment, in the event that the judgment is not fully satisfied.

The Court respectfully recommends denying at this time Plaintiff's request for relief in the form of forfeiture of the insurance policy, without prejudice. The Court further recommends denying without prejudice Plaintiff's request for alternative relief in the form of a permanent injunction.

Finally, the Court recommends that Plaintiff be directed to file a proposed judgment and order within two weeks of a final determination on the motion. (*See* Pl.'s Mem., ECF No. 39-3, at 19 n.4.)

\*   \*   \*   \*   \*

This report and recommendation will be filed electronically. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Nina R. Morrison at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g., Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated: Brooklyn, New York
      January 29, 2025

*Taryn A. Merkl*
_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

NATIONAL CREDIT UNION ADMINISTRATION    :
BOARD, as Liquidating Agent for MELROSE CREDIT    Civil Action No.: 1:23-cv-01061
UNION,    :  (NRM) (TAM)

                           Plaintiff,    :

            - against -    :

ALAN KAUFMAN and MITCHELL REIVER,    :

                     Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## FINAL JUDGMENT

This matter comes before this Court subsequent to its order of March 18, 2025, adopting in full the report and recommendation of United States magistrate judge Taryn A. Merkl (ECF No. 43), and granting in part Plaintiff's motion for partial summary judgment against defendant Alan Kaufman ("Kaufman"). That motion was brought by the Plaintiff National Credit Union Administration Board ("NCUAB" or "Plaintiff"), in its capacity as liquidating agent for Melrose Credit Union. Considering the entry of that order, the previous dismissal of claims against defendant Mitchell Reiver (ECF No. 32), and the NCUAB forbearance of further pursuit of any claims or requests for relief that have not been resolved through its motion for partial summary judgment, this case is ripe for final judgment consistent with this Court's adoption of the magistrate judge's report and recommendation.

In that report and recommendation, the magistrate judge found that "Plaintiff is entitled to judgment as a matter of law as to its breach of fiduciary duty claims against Kaufman[,]" contained within the Second and Third Causes of Action in the Complaint. (ECF No. 43, p. 47; *see also id.* at 24.) The magistrate judge thus "f[ound] that Kaufman was a faithless servant as a matter of

law[,]" (*id.* at 31.), and that "Plaintiff is entitled to forfeiture of Kaufman's full compensation paid during his period of disloyalty[]" (*id.* at 39). As relief, the magistrate judge "respectfully recommend[ed] that Plaintiff be awarded a judgment in the amount of Kaufman's compensation, i.e., $7,323,557.15[]" (*id.* at 42; *see also id.* at 34), and rejected Kaufman's argument that any recovery on such money judgment should be applied against the criminal restitution that Kaufman owes to the NCUAB (*see id.* at 41-42). As further relief, the magistrate judge "recommend[ed] the entry of an equitable relief order providing Plaintiff with the ability to recover whatever value [Kaufman's life insurance] policy holds up to the amount of the money judgment." (*Id.* at 45; *see also id.* at 47).

The life insurance policy ("Policy") was purchased by Melrose Credit Union and provided to Kaufman as compensation pursuant to a Collateral Assignment Split-Dollar Insurance Agreement (ECF No. 33-21, Ex. S). Kaufman granted Melrose Credit Union a lien against the Policy in the amount of the $1.5 million corresponding with the premiums that it paid to purchase the Policy. (*Id.*; ECF Nos. 33-22 & 33-23, Exs. T & U.) The Policy was issued by Massachusetts Mutual Life Insurance Company ("MassMutual"). (ECF No. 1, Compl ¶ 21.) MassMutual has a lien against the Policy for loans that it made to Kaufman against the value of the Policy. (ECF No. 33-24, Ex. V.) The facts contained within this paragraph are not disputed. (*See* ECF No. 14, letter from Kaufman arguing that MassMutual is an indispensable party to this action; ECF No. 35, Kaufman SOF ¶¶ 33-35, not disputing facts concerning the Policy).

Consistent with the undisputed facts or the preceding paragraph, and this Court's adoption of the magistrate judge's report and recommendation in full, it is now ordered, adjudged, and decreed as follows:

1.     On account of the facts alleged in the Second and Third Causes of Action of the Complaint, Kaufman breached his fiduciary duty to Melrose Credit Union as a matter of New York law. As a result of such breaches, NCUAB, as the successor in interest to Melrose Credit Union, is entitled to damages from Kaufman pursuant to New York's faithless servant doctrine.

2.     Judgment is entered in favor of plaintiff National Credit Union Administration Board, as liquidating agent for Melrose Credit Union, and against defendant Alan Kaufman in the amount of $7,323,557.15, which is equal to the compensation that Melrose Credit Union paid to Kaufman from February 10, 2011, through his termination on or about June 28, 2016. NCUAB is entitled to prejudgment interest on that amount consistent with N.Y. Civ. Prac. L. & R. § 5001(a). Interest accrues on the total judgment amount, which includes all prejudgment interest, in accordance with 28 U.S.C. § 1961(a).

3.     Pursuant to this Court's equitable authority, an order is entered imposing an equitable lien in favor on NCUAB on Kaufman's interest in the Policy to the extent of the judgment in Paragraph 2. So long as such judgment remains unsatisfied, the NCUAB may at any time and in its sole discretion enforce the lien by redeeming the Policy for its cash value and collecting the amount still owing from the proceeds after payment of all prior liens, including the lien of MassMutual for unpaid loans to Kaufman and its lien for the $1.5 million in premiums that Melrose Credit Union paid to purchase the Policy.

4.     In lieu of enforcing the equitable lien during Kaufman's lifetime, the NCUAB may wait until such time as the death benefit is payable from the Policy, and at such time, after payment of all prior liens, including the lien of MassMutual for unpaid loans to Kaufman and its lien for the $1.5 million in premiums that Melrose Credit Union paid to purchase the Policy, apply the amount of the death benefit toward the amount still owing on the judgment in Paragraph 2. In that

circumstance, the net death benefit is payable to NCUAB regardless of any interest of a beneficiary of the Policy ("beneficiary") in the Policy's death benefit, and NCUAB's equitable lien shall have priority of payment over any such beneficiary.

     5.     The collection of the judgment in Paragraph 2 shall not affect, and need not be applied against, the NCUAB's interest in payment as a victim under the criminal restitution order against Kaufman in *United States v. Kaufman*, No. 19-CR-504 (LAK) (S.D.N.Y.), or NCUAB's lien for the $1.5 million in premiums that Melrose Credit Union paid to purchase the Policy.

     6.     Because the Court has ordered forfeiture of Kaufman's interest in the Policy up to the value of the judgment, MassMutual may take instructions with respect to all aspects of administration of the Policy, including without limitation the redemption of the Policy for its cash value, from an authorized representative of the NCUAB, unless Kaufman or, in the event of Kaufman's death, a beneficiary, can establish solely as a factual matter, through competent evidence and to the satisfaction of MassMutual, that the judgment in Paragraph 2 has been fully satisfied. MassMutual may **neither** take instructions with respect to any aspect of administration of the Policy, including without limitation the redemption of the Policy for its cash value, from Kaufman or any beneficiary **nor** provide any loan, payment, or benefit related to the Policy to Kaufman or any beneficiary, unless such person can establish solely as a factual matter, through competent evidence and to the satisfaction of MassMutual, that the judgment in Paragraph 2 has been fully satisfied.

     7.     NCUAB shall serve a copy of this judgment upon MassMutual.

     8.     Any legal or equitable relief not specifically awarded in this judgment, including compensatory damages arising from the facts alleged in the Second and Third Causes of Action, is waived by the NCUAB.

9.    NCUAB's First and Sixth Causes of Action, and any claims not specifically referenced in this judgment, are dismissed.


**It is so ordered, adjudged, and decreed:**


Dated: June 13, 2025                          /s/ NRM

                                              Nina R. Morrison
                                              United States District Judge

**United States Court of Appeals for the Second Circuit**
**Thurgood Marshall U.S. Courthouse**
**40 Foley Square**
**New York, NY 10007**

**DEBRA ANN LIVINGSTON**
CHIEF JUDGE

**CATHERINE O'HAGAN WOLFE**
CLERK OF COURT

Date: July 9, 2025
Docket #: 25-1665
Short Title: National Credit Union Administration Board v. Kaufman

DC Docket #: 1:23-cv-1061
DC Court: EDNY (BROOKLYN)
DC Judge: Trial Judge - Nina R. Morrison

## NOTICE OF RECORD ON APPEAL FILED

In the above referenced case the document indicated below has been filed in the Court.

_____ Record on Appeal - Certified List

_____ Record on Appeal - CD ROM

_____ Record on Appeal - Paper Documents

__x_ Record on Appeal - Electronic Index

_____ Record on Appeal - Paper Index

Inquiries regarding this case may be directed to 212-857-8561.

CERTIFICATE OF SERVICE

Defendant-Appellant, Alan Kaufman, pro se litigant, hereby certifies that, on October 30, 2025, he caused a true and correct copy of the foregoing Appendix for Defendant-Appellant to be served upon Plaintiff-Appellee, by depositing same on said date with the United States Postal Service via priority mail addressed to Plaintiff-Appellee's counsel, as follows:

Joshua Cash, Esq.
Wilson Elser
150 E. 42nd Street
New York, NY 10017


_____
Alan Kaufman

ce (restrictions apply).*

ic a

atio

ing o
com
avail

IA

## UNITED STATES POSTAL SERVICE. *Retail*

**P**

**US POSTAGE PAID**

**$13.20**

Origin: 11753
10/30/25
3542250753-06

### PRIORITY MAIL®

4 Lb 11.00 Oz

### RDC 03

EXPECTED DELIVERY DAY: 11/01/25

C099

SHIP
TO:

40 FOLEY SQ
NEW YORK NY 10007-1502

**USPS TRACKING® #**

9505 5161 4913 5303 0385 08

---



**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

FROM:

Alan Kaufman
175 High Pond Dr
Jericho NY 11753

TO:

Clerks Office
United States Court of Appeals
Thurogood Marshall US Court
40 Foley Square
New York, NY 10007

Label 228, December 2023    FOR DOMESTIC AND INTERNATIONAL USE