# 25-1665-cv

## United States Court of Appeals
*for the*
## Second Circuit

NATIONAL CREDIT UNION ADMINISTRATION BOARD,
as Liquidating Agent for Melrose Credit Union,

*Plaintiff-Counter-Defendant-Appellee,*

– v. –

ALAN KAUFMAN,

*Defendant-Appellant,*

MITCHELL REIVER,

*Defendant-Counter-Claimant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

**BRIEF FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLEE**

JOSHUA CASH
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
*Attorneys for Plaintiff-Counter-Defendant-Appellee*
150 East 42nd Street, 22nd Floor
New York, New York 10017
(212) 490-3000

COUNSEL PRESS (800) 4-APPEAL • (389936)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ……………………..………………………………iii

STATEMENT OF JURISDICTION…………………...…………………………...1

COUNTER-STATEMENT OF THE ISSUES…………………..…………………2

COUNTER-STATEMENT OF THE CASE……………………….……………4

*The NCUAB'S lawsuit against Kaufman*……….…………..………………4

*The criminal case against Kaufman*……………………...………………5

*The NCUAB's motion for partial summary judgment*………………………8

*The final judgment and appeal therefrom*………………..……..………...10

SUMMARY OF ARGUMENT………………………………………….…………..13

ARGUMENT ...........................................................................................................15

I. Kaufman abandoned his arguments concerning the application of collateral estoppel by failing to object to the magistrate judge's report and recommendation or by failing to raise them below.…………….15

II. Kaufman's challenges to the application of collateral estoppel are meritless and fail to show plain error…………………………….……..18

*The standard of review*…………………………………….…..…….18

*The criminal case is final for purposes of collateral estoppel*……….20

*Kaufman may not relitigate the criminal case here*………………….21

*Kaufman's convictions under 18 U.S.C. § 215 establish breaches of his fiduciary duty to Melrose*………………..………………………..24

III. The undisputed summary-judgment record and Kaufman's admissions in his counter-statement of facts provide alternative bases to affirm summary judgment……………………………………………..27

*The Georgiton gratuities*…………….…………….………..………….28

*The CBS Radio gratuities*………………………..……..…………….30

IV. Kaufman's vague and undeveloped attack on the NCUAB's Article III standing as liquidating agent and legal successor to Melrose is without merit……………………………………………………...……….32

*Melrose suffered an injury in fact at the hands of Kaufman*…..…….32

*The NCUAB has standing to litigate Melrose's claims*……………...34

CONCLUSION ………………………………………………...…………37

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Adato v. Kagan,*
599 F.2d 1111 (2d Cir. 1979)……………………….…………………………35

*Adirondack Transit Lines, Inc. v. United Transp. Union, Loc. 1582,*
305 F.3d 82 (2d Cir. 2002)……………………………………………………..27

*B & B Hardware, Inc. v. Hargis Indus., Inc.,*
575 U.S. 138 (2015)…………………………………………….……..…….22

*Bifolck v. Philip Morris USA Inc.,*
936 F.3d 74 (2d Cir. 2019)…………………………………………..18, 24-25

*Bohnak v. Marsh & McLennan Companies, Inc.,*
79 F.4th 276 (2d Cir. 2023)…………………………………….……………33

*Bravo-Fernandez v. United States,*
580 U.S. 5 (2016)……………………………………………………………23

*Brit. Am. & E. Co. v. Wirth Ltd.,*
592 F.2d 75 (2d Cir. 1979)……………………………………………………..25

*Bulgari v. Bulgari*,
No. 22 CIV. 5072 (LGS), 2025 WL 1558355 (S.D.N.Y. June 2, 2025)……..…...33

*Caidor v. Onondaga Cnty.*,
517 F.3d 601 (2d Cir. 2008)…….…………..……………………...….…….16

*Carco Grp., Inc. v. Maconachy,*
383 F. App'x 73 (2d Cir. 2010)……………………………………………...25

*Dupree v. Younger,*
598 U.S. 729 (2023)……………………………..…………….……….17

*F.D.I.C. v. First Horizon Asset Sec., Inc.,*
821 F.3d 372 (2d Cir. 2016)……………………………..………….….35

*Feiger v. Iral Jewelry, Ltd.*,
363 N.E.2d 350 (N.Y. 1977)………………………………...………………..8

*Gelb v. Royal Globe Ins. Co.*,
798 F.2d 38 (2d Cir. 1986)…………………………………………………..20, 23, 25

*Gibbs ex rel. Est. of Gibbs v. CIGNA Corp.*,
440 F.3d 571 (2d Cir. 2006)……………..…………….……………………………29

*Hilton v. Wright*,
673 F.3d 120 (2d Cir. 2012)…………………………...…………………….18

*In re Libor-Based Fin. Instruments Antitrust Litig.*,
No. 11 MDL 2262 NRB, 2015 WL 4634541 (S.D.N.Y. Aug. 4, 2015)…………..36

*In re Nortel Networks Corp. Sec. Litig.*,
539 F.3d 129 (2d Cir. 2008)…………………………………………………...16-17

*King v. City of New York, Dep't of Corr.*,
419 F. App'x 25 (2d Cir. 2011)………………………………...……….15-16, 18

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)……………………………………………………………...32-33

*Microbot Med., Inc. v. Mona*,
No. 19 CIV. 3782 (GBD) (RWL), 2024 WL 964594 (S.D.N.Y. Mar. 5, 2024),
*aff'd*, No. 24-559-CV, 2025 WL 262590 (2d Cir. Jan. 22, 2025)………...………33

*Moates v. Barkley*,
147 F.3d 207, 209 (2d Cir. 1998)……………………………….…………………2

*Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*,
775 F.3d 145 (2d Cir. 2014)………………………………...……………4, 34

*Nat'l Credit Union Admin. Bd. v. HSBC Bank USA, Nat. Ass'n*,
117 F. Supp. 3d 392 (S.D.N.Y. 2015)……………………………...………..35

*Nat'l Credit Union Admin. Bd. v. Kaufman*,
No. 23-CV-1061 (NRM) (TAM), 2025 WL 854777 (E.D.N.Y. Jan. 29, 2025)…...9

*Norton v. Sam's Club*,
145 F.3d 114 (2d Cir. 1998)…………………………………………………24

*O'Melveny & Myers v. F.D.I.C.*,
512 U.S. 79 (1994)……………………………………………………….…35

*Phansalkar v. Andersen Weinroth & Co., L.P.*,
344 F.3d 184 (2d Cir. 2003)………………………………….………8, 25, 34

*Poller v. BioScrip, Inc.*,
974 F. Supp. 2d 204 (S.D.N.Y. 2013)……………………………………….25

*San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal.*,
545 U.S. 323 (2005)…………………………………………………………22

*Scanlan v. Eisenberg*,
669 F.3d 838 (7th Cir. 2012)……………………………………………...33

*S.E.C. v. Illarramendi*,
732 F. App'x 10 (2d. Cir. 2018……...………………..……………….……..20-21, 27

*S.E.C. v. Monarch Funding Corp.*,
192 F.3d 295 (2d Cir. 1999)…………………………………………………22

*Shearson Lehman Hutton, Inc. v. Wagoner*,
944 F.2d 114 (2d Cir. 1991)…………….……………………………………35-36

*Silber v. United States*,
370 U.S. 717 (1962)………………………...………………………….…18

*Snyder v. United States*,
603 U.S. 1 (2024)………………………………………………………..7, 17, 22

*Spence v. Superintendent, Great Meadow Corr. Facility*,
219 F.3d 162 (2d Cir. 2000)……………………………………………...…16, 18

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)………………………………………………………..32-33

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
554 U.S. 269 (2008)……………………………………………………..33, 35

*Strubel v. Comenity Bank*,
842 F.3d 181 (2d Cir. 2016)……………………………………………..18, 32

*Terry v. Inc. Vill. of Patchogue*,
826 F.3d 631 (2d Cir. 2016)………………………………………………32

*Thomas v. Arn*,
474 U.S. 140 (1985)……………………………………..……………..…………16

*Triestman v. Fed. Bureau of Prisons,*
470 F.3d 471 (2d Cir.2006)……………………………..……………………11

*United States v. 303 W. 116th St., New York, New York*,
901 F.2d 288 (2d Cir. 1990)…………………………………………….....20

*United States v. Calk,*
87 F.4th 164 (2d Cir. 2023)……………………………..……………………26

*United States v. Carson*,
52 F.3d 1173, 1188 (2d Cir.1995) ………………………………………19

*United States v. GAF Corp.,*
928 F.2d 1253 (2d Cir. 1991)……………………………………………..29

*United States v. Georgiton,*
No. 23-6807-CR, 2025 WL 1091253 (2d Cir. Apr. 8, 2025)………………7, 17, 23

*United States v. Gomez,*
877 F.3d 76 (2d Cir. 2017)……………………………………………..16

*United States v. Graham*,
51 F.4th 67, 80 (2d Cir. 2022)………………………………………………16

*United States v. Kaufman,*
No. 19-CR-504 (LAK), 2021 WL 4084523 (S.D.N.Y. Sept. 8, 2021) …..…*passim*

*United States v. Kaufman,*
No. 21-2589, 2023 WL 1871669 (2d Cir. Feb. 10, 2023)……..…………… *passim*

*United States v. Kaufman*,
No. 19-CR-504(LAK), 2023 WL 4493499, at *1 (S.D.N.Y. July 12, 2023)………7

*United States v. Male Juvenile* (95–CR–1074),
121 F.3d 34 (2d Cir. 1997)…………………………………...…………...15

*United States v. Marcus,*
560 U.S. 258 (2010)………………………………...………………………19

*United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Acct. L7N01967,*
731 F.3d 189 (2d Cir. 2013)……………………………………..………..18-19

*W.A. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,*
549 F.3d 100 (2d Cir. 2008)………………………………………………35

*Yueqing Zhang v. Gonzales*,
426 F.3d 540 (2d Cir. 2005).……………………………………...………24

**Statutes:**

12 U.S.C. 1751 *et seq*…………………………………………………………4

12 U.S.C. § 1786……………………………...……………………..4, 34

12 U.S.C. § 1787……………………………...…………...…..4, 34-36

12 U.S.C. § 1789……..……………………………...……………………..1

18 U.S.C. § 215……………………...……………………………….*passim*

18 U.S.C. § 3664...………………………………………...………8, 19

28 U.S.C. § 1291……………………………………...……………………1

28 U.S.C. § 2255………...…………...……………………………….*passim*

**Rules:**

Fed. R. App. P. 4(a)(1)(B)(ii)……………………………………………1

Fed. R. App. P. 31(c)…………………………………………………………...11
Fed. R. Civ. P. 56(a)………………………………………………………..…..27
Local Rule 31.2(d)…………………….……..……………………….………..…11

## STATEMENT OF JURISDICTION

The National Credit Union Administration Board ("NCUAB") filed this case in the Eastern District of New York setting forth, among other causes of action, claims for breach of fiduciary duty against former Melrose Credit Union ("Melrose") CEO Alan Kaufman ("Kaufman"). (A. 27.[1]) The district court had jurisdiction over the case pursuant to 12 U.S.C. § 1789(a)(2).

Following magistrate judge Taryn A. Merkl's unobjected-to report and recommendation on the NCUAB's motion for partial summary judgment, which proposed granting that motion in substantial part (A. 13-14, 16-63), district court judge Nina A. Morrison adopted the report and recommendation in full (A. 14). The district court entered final judgment in favor of the NCUAB on June 13, 2025. (A. 14, 64-69.)

Kaufman, now proceeding *pro se*, filed a notice of appeal with the district court on July 7, 2025. (A. 14.) The notice is timely pursuant to Fed. A. App. P. 4(a)(1)(B)(ii). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

---

[1] "A." refers to the appendix submitted by Kaufman, "Br." refers to Kaufman's opening brief, and "SA." refers to the supplemental appendix filed alongside the NCUAB's answer brief.

## COUNTER-STATEMENT OF ISSUES PRESENTED FOR REVIEW

Appellee rephrases the five issues presented by Appellant as the following four questions,[2] and suggests that "no" is the answer to all of them:

(1) Did the magistrate judge commit plain error in finding that the issues established by the criminal judgment, adjudging Kaufman guilty of two counts of accepting illegal gratuities under 18 U.S.C. § 215(a)(2) as CEO of Melrose, collaterally estopped him from disputing whether he breached his fiduciary duties to Melrose because the issues in both cases were not in fact identical?

(2) Did the magistrate judge commit plain error in treating the criminal judgment as "full and final" for purposes of collateral estoppel because, after two unsuccessful appeals of that criminal judgment, Kaufman now intends to challenge that criminal judgment through a motion pursuant to 28 U.S.C. § 2255 on a yet-to-be-disclosed basis?

(3) Did the magistrate judge commit plain error and improperly apply collateral estoppel by failing to consider "irregularities" in the criminal case and/or

---

[2] Kaufman's fifth issue is "Whether the role of the National Credit Union Administration (NCUA), plaintiff, as liquidating agent was properly considered in evaluating its claims and standing." (Br. 5.) This is not a discrete question and thus should be disregarded by this Court. *See Moates v. Barkley*, 147 F.3d 207, 209 (2d Cir. 1998) ("[P]ro se appellants must still comply with Federal Rule of Appellate Procedure 28(a), which requires appellants 'to provide the court with a clear statement of the issues on appeal[.]'").

the possibility that the conviction was contrary to law because 18 U.S.C. § 215 criminalizes bribes but not gratuities to bank officials?

(4) Does the NCUAB lack Article III standing either because Kaufman's breaches of fiduciary duty through accepting criminal gratuities, which resulted in undisputed economic loss to Melrose and untoward gains to Kaufman, did not cause an injury in fact or because the liquidating agent, the legal successor to Melrose pursuant to 12 U.S.C. § 1787(b)(2)(A), lacks standing to recover based upon Kaufman's harm to Melrose?

Appellee further submits the additional three questions for the Court's consideration, and suggests that "yes" is the answer to all of them:

(5) Did Kaufman abandon his challenges to the magistrate judge's rulings on collateral estoppel when his attorneys failed to submit objections to the report and recommendation issued in the district court below?

(6) Did Kaufman abandon his arguments that the issues in this case and his criminal case are not sufficiently identical, and that 18 U.S.C. § 215(a)(2) does not criminalize gratuities to bank officials, by failing to raise both of those arguments in the district court below?

(7) Even if the magistrate judge plainly erred in applying collateral estoppel, can summary judgment still be affirmed based on the magistrate judge's alternative holding that the record did not reflect any genuine disputes of material fact and

because Kaufman's admissions in his counter-statement of facts in the district court below independently establish breaches of his fiduciary duty?

## COUNTER-STATEMENT OF THE CASE

*The NCUAB's lawsuit against Kaufman.*

The NCUAB directs the National Credit Union Administration ("NCUA"), an independent federal agency that operates under the Federal Credit Union Act ("FCUA"), 12 U.S.C. 1751 *et seq.*, as amended through P.L. 116-260, enacted December 27, 2020. In addition to regulating credit unions, the NCUA manages the National Credit Union Share Insurance Fund. *See Nat'l Credit Union Admin. Bd. v. Goldman, Sachs & Co.*, 775 F.3d 145, 147 (2d Cir. 2014). To protect the fund, the FCUA authorizes the NCUAB to be appointed and act as a conservator of financially-troubled credit unions and as the liquidating agent of failed credit unions. *See id.* (citing 12 U.S.C. §§ 1786(h), 1787).

Melrose Credit Union ("Melrose") was a state-chartered, federally-insured credit union located in Briarwood, New York.[3] Its primary regulator was the New York Department of Financial Services ("DFS") in addition to the NCUA, which also insured it. *Id*. On February 10, 2017, DFS conserved Melrose and appointed the NCUAB as its conservator. (SA. 1, 18.) On August 31, 2018, DFS liquidated Melrose and appointed the NCUAB as the liquidating agent. (SA. 1-2, 18.)

---

[3] *See* OIG-19-06 Material Loss Review of Melrose Credit Union, LOMTO Federal Credit Union, and Bay Ridge Federal Credit Union, 3/29/2019

In winding up the affairs of Melrose, the NCUAB brought this lawsuit as liquidating agent of Melrose for the benefit of the stakeholders of Melrose's asset management estate. The complaint set forth five causes of action, some of which were against Kaufman and some of which were against former Melrose General Counsel Mitchell Reiver. (A. 27.) Following a settlement with Reiver (A. 10), and a period of written discovery (A. 9), NCUAB moved for partial summary judgment against Kaufman as to the second and third causes of action (A. 12-13, 30), both of which are claims for breach of fiduciary duty. The factual allegations underlying those causes of actions were Kaufman's acceptance of illegal gratuities from Melrose's largest borrower, Tony Georgiton (Count II), and from CBS Radio, a vendor from whom Melrose purchased significant amounts of radio advertising time (Count III). (A. 32.)

*The criminal case against Kaufman.*

At the time the NCUAB had moved for a partial summary judgment, a jury had already found Kaufman guilty of accepting gratuities from Georgiton and CBS Radio in violation of 18 U.S.C. § 215(a)(2). *United States v. Kaufman*, No. 19-CR-504 (LAK), 2021 WL 4084523, at *1 (S.D.N.Y. Sept. 8, 2021), *aff'd*, No. 21-2589, 2023 WL 1871669 (2d Cir. Feb. 10, 2023). During the trial, the jury was presented with substantial evidence that Kaufman had accepted illegal gratuities from Georgiton. *See id.* at *3-6. The gratuities included Kaufman's receipt of rent-free

lodging from Georgiton between 2010 and 2013, and Kaufman's purchase of that same property for the same price that Georgiton had paid for it in 2010, a purchase financed by a $200,000 cosigned loan secured by Georgiton's Melrose share account and a $240,000 "loan" from Georgiton to Kaufman on which Kaufman has never made any payments. *Id.* The jury was also presented with substantial evidence that Kaufman had solicited and accepted gratuities from CBS Radio that were illegal for him to accept. *See id.* at *6-7. The gratuities solicited include a trip to the Super Bowl, and the gratuities accepted include luxury vacation packages to desirable destinations such as the Super Bowl, Paris, and Hawaii. *Id.*

Following the trial and the guilty verdict on the two counts, Kaufman filed a motion for acquittal, or in the alternative for a new trial, which the district court denied. *Id.* at *28. Kaufman then appealed several aspects of the criminal case to this Court. *Kaufman*, 2023 WL 1871669. In his appeal, Kaufman's attorney raised several arguments pertaining to the two counts on which he was convicted, including constructive amendment and prejudicial variance from the indictment, insufficiency of the evidence, and a challenge to venue as well as to the district court's jury instructions and exclusion of expert witness testimony. *Id.* at *1-5. Kaufman also appealed from the district court's restitution and forfeiture orders. *Id.* at *5-6. The district court ordered restitution on the ground that "Kaufman arranged for Melrose to . . . pay [two million dollars] for the naming-rights of a

venue partially owned by Georgiton." *Id.* at *1. The district court determined "that the Melrose Ballroom naming-rights agreement had no value to Melrose[,] [that] . . . the actual loss amount was therefore $2 million . . . . [and that] Kaufman proximately caused the loss." *Id.* at *5. Following oral argument, this Court affirmed the judgment of the district court on February 10, 2023. *Id.* at *6.

Following this Court's affirmance of his criminal convictions, Kaufman filed a motion for a new trial in the district court based on "newly discovered evidence." *United States v. Kaufman*, No. 19-CR-504(LAK), 2023 WL 4493499, at *1 (S.D.N.Y. July 12, 2023). Kaufman sought a new trial as to the Georgiton gratuities on the ground that the closing for the sale of the residence he purchased from Georgiton (which Kaufman attended) actually took place in the Eastern District, and thus venue in the Southern District was improper. *Id.* at *2. That motion was denied, *Kaufman*, 2023 WL 4493499, at *4, and this Court later affirmed its denial. *United States v. Georgiton*, No. 23-6807-CR, 2025 WL 1091253, at *3 (2d Cir. Apr. 8, 2025). This Court also declined to address the newly-raised argument in Kaufman's appellate brief, that *Snyder v. United States*, 603 U.S. 1 (2024) requires the district court to vacate Kaufman's conviction for illegal gratuities because 18 U.S.C. § 215 only criminalizes bribes. *Id.* at *3, n.1.

*The NCUAB's motion for partial summary judgment.*

Based on the issues decided against Kaufman in the criminal case, consistent with the common law of collateral estoppel and 18 U.S.C. § 3664(l),[4] the NCUAB filed a motion for partial summary judgment, seeking to have Kaufman estopped from disputing those same issues as to the breach of fiduciary duty claims in Counts II and III of the NCUAB's complaint. (A. 32-33.) The NCUAB also sought to establish liability for Kaufman's breach of fiduciary duties through his prior admissions in an administrative deposition and in pleadings submitted by his attorneys. (SA. 20-30.) In its motion, the NCUAB did not seek compensatory damages for the breaches of fiduciary duty in the second and third causes of action but rather sought a monetary award under New York's faithless servant doctrine. (A. 45-56.) That doctrine permits an employer to disgorge the salary and benefits paid to a disloyal employee during the period of disloyalty. *See Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) ("One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation[.]") (quoting *Feiger v. Iral Jewelry, Ltd.*, 363 N.E.2d 350 (N.Y. 1977)). Between 2011 and 2016,

---

[4] That section provides that a "conviction of a defendant for an offense involving the act giving rise to an order of restitution shall estop the defendant from denying the essential allegations of that offense in any subsequent Federal civil proceeding or State civil proceeding . . . brought by the victim." 18 U.S.C. § 3664(l).

Kaufman was documented to have received at least $7,323,557.15 in salary and benefits from Melrose. (A. 57.) As further relief, the NCUAB requested the right to enforce that monetary award against Kaufman's whole life insurance policy from MassMutual, which Melrose fully funded for Kaufman as part of his total compensation. (A. 57-60.)

Following the completion of briefing on the motion for partial summary judgment (A. 12-13), district court judge Nina A. Morrison referred the motion to magistrate judge Taryn A. Merkl (A. 13). On January 29, 2025, the magistrate judge issued her report and recommendation. (A. 13, 16-63.[5]) The magistrate judge concluded that because the four collateral estoppel factors were met,[6] "Kaufman should . . . be estopped from disputing the issues decided in the underlying criminal conviction in this proceeding." (A. 35.) Applying collateral estoppel, the magistrate judge found that the NCUAB established that Kaufman breached his fiduciary duties to Melrose with respect to the gratuities received from both Georgiton and CBS Radio. (A. 42-45.) The magistrate judge determined Kaufman's breaches to be substantial such that the NCUAB was permitted to

---

[5] The report and recommendation is also available in Westlaw. *See Nat'l Credit Union Admin. Bd. v. Kaufman*, No. 23-CV-1061 (NRM) (TAM), 2025 WL 854777 (E.D.N.Y. Jan. 29, 2025).

[6] Although the term "issue preclusion" is sometimes preferred to "collateral estoppel," because the magistrate judge used the term "collateral estoppel," this brief uses the same terminology in order to maintain consistency.

disgorge Kaufman's salary and benefits through application of New York's faithless servant doctrine. (A. 50-56.) The magistrate judge also recommended as a remedy that the monetary award be secured by an equitable lien on Kaufman's whole life insurance policy from MassMutual.[7] (A. 66-67.)

The report and recommendation stated that "[o]bjections to this report and recommendation must be filed . . . within fourteen (14) days of filing" and that a "[f]ailure to file objections within the specified time waives the right to appeal both before the district court and appellate courts." (A. 63) (citations omitted). Neither party filed objections to the magistrate judge's rulings. The district court entered an order, finding the report and recommendation to be "well reasoned" and concurring "in both its reasoning and its result." (A. 14.) The order required the NCUAB to submit a proposed final judgment. (A. 14.) The NCUAB did so, and Kaufman's attorneys did not file any response thereto. (A.14.)

*The final judgment and appeal therefrom.*

On June 13, 2025, the district court entered final judgment. (A. 14, 64-69.) That judgment includes a monetary award in the amount of $7,323,557.15 in favor of the NCUAB and against Kaufman for salary paid to Kaufman while he was

---

[7] The magistrate judge recommended against granting NCUAB a permanent injunction with respect to the insurance policy at the summary-judgment stage. (A. 60-62.) The NCUAB had made that argument in the alternative to the argument for an equitable lien, and, for that reason, the NCUAB did not submit objections to that recommendation to the district court.

disloyal to Melrose. (A. 66.) The judgment created an equitable lien securing that amount on Kaufman's whole life insurance policy with MassMutual, which permits the NCUAB to enforce the lien either during his lifetime or following his death. (A. 66-67.) The judgment also reflects the NCUAB's dismissal of its claims and right to any remedies not included in the final judgment, including the right to seek compensatory damages resulting from Kaufman's acceptance of illegal gratuities from Georgiton and CBS Radio. (A. 68.)

Kaufman, proceeding *pro se*, filed a notice of appeal from the final judgment on July 7, 2025. (A. 14.) Following Kaufman's submission of a briefing schedule, this Court ordered his opening brief due to be filed by October 29, 2025—the due date that Kaufman had proposed to this Court. (ECF No. 18, 22.) However, he did not attempt to file his brief until October 31, 2025, after the deadline had passed. (ECF No. 23.) Although Kaufman is *pro se* in this appeal, "pro se status 'does not exempt a party from compliance with relevant rules of procedural and substantive law[.]" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). Accordingly, this Court is authorized to dismiss Kaufman's appeal in its entirety. *See* Local Rule 31.2(d) ("The court may dismiss an appeal . . . for failure to timely file a brief . . . ."); *see also* Fed. A. App. P. 31(c) ("If an appellant fails to file a brief within the time provided by this rule, or within an extended time, an appellee may move to dismiss the appeal.").

In addition to Kaufman's brief being subject to dismissal as untimely, the arguments in the brief are effectively abandoned because they are incomprehensible, were not made to the district court in the first instance, and/or were made to the magistrate judge but not the subject of objections to the district court. Should this Court decide to overlook those defects and to address the merits of Kaufman's arguments, Kaufman has made no argument that justifies disturbing the district court's judgment.

In a two-page argument section, Kaufman argues that the magistrate judge improperly applied collateral estoppel to breaches of fiduciary duty based on his criminal conviction. (Br. 9-10.) Construing the arguments most favorably to Kaufman, his four arguments are that (1) the issues in the criminal case and this case were not sufficiently identical for purposes of collateral estoppel, (2) the criminal case is still not final for purposes of collateral estoppel because he now intends to file a § 2255 motion, (3) collateral estoppel is inappropriate because the statute under which he was convicted, 18 U.S.C. § 215, does not criminalize the receipt of gratuities, and (4) either Melrose and/or NCUAB as liquidating agent has not suffered an injury in fact sufficient to establish Article III standing. (Br. 9-10.) Kaufman does not challenge the district court's monetary award under New York's faithless servant doctrine or the equitable lien against his whole life insurance policy securing that award. Because none of the arguments he makes has merit, the

district court's judgment based on the magistrate judge's report and recommendation is properly affirmed by this Court.

## SUMMARY OF ARGUMENT

Kaufman abandoned his right to have this Court address his arguments in this appeal by either failing to object to the magistrate judge's report and recommendation or by omitting the arguments in the district court. To the extent his arguments are intelligible, Kaufman's four arguments, contained within two pages in his appellate brief, are mostly a rehash of meritless arguments that were unsuccessful in his criminal case or in this civil case. Assuming this Court addresses Kaufman's three arguments directed at the magistrate judge's application of collateral estoppel, they fail for the following reasons:

***First***, Kaufman's position that collateral estoppel should be held in abeyance until his yet-to-be-filed § 2255 motion—a motion that will follow two unsuccessful criminal appeals—is filed and decided is contrary to "black letter" law in this Circuit. Indeed, Kaufman's position would eviscerate the doctrine of collateral estoppel by delaying the doctrine's effect until the party to the prior proceeding finally acquiesces to the prior judgment.

***Second***, Kaufman's vague references to "irregularities" in his criminal trial and his new and novel legal argument that 18 U.S.C. § 215(a)(2) criminalizes bribes but not gratuities, have no bearing on whether collateral estoppel was

properly applied. These arguments attempt to relitigate the criminal case and to thwart the repose that the doctrine provides. Collateral estoppel applies if an appeal from the prior judgment is permitted, and analysis of the four factors determines that the issues previously decided were reliably adjudicated and are identical.

***Third***, Kaufman's unsubstantiated allusions to the differences between the breach of fiduciary claims here and his convictions for receipt of illegal gratuities are beside the point. Kaufman's corrupt acceptance of gratuities from his employer's customer and vendor, as established in the criminal case, is a clear breach of the duty of loyalty to Melrose and thus a breach of fiduciary duty. As the magistrate judge properly concluded, the issues are "identical" for purposes of collateral estoppel.

Even if the magistrate judge had misapplied collateral estoppel, and the district court judge erroneously concurred in that conclusion, partial summary judgment was warranted based on a lack of genuine dispute of material fact in the summary judgment record, as recognized by the magistrate judge. Indeed, Kaufman did not dispute receiving gratuities in the criminal case or in the case below. Although Kaufman suggested the gratuities were ratified by the Melrose board or were not "corrupt" or wrongful, his unsupported suggestions failed to create a genuine issue of material fact for purposes of summary judgment.

Kaufman's "argument" that the NCUAB as liquidating agent of Melrose lacks Article III standing may be raised for the first time on appeal because standing is jurisdictional. Still, Kaufman's general statement that injury in fact is lacking is too imprecise and general to be considered an argument. In any event, the historical tradition of breach of fiduciary duty claims, the $2 million loss Kaufman caused Melrose, and Kaufman's receipt of gratuities to Melrose's detriment, all support standing. The liquidating agent, as the legal successor to Melrose by federal statute, has standing to pursue Melrose's claims, including the breach of fiduciary duty claims at issue here.

## ARGUMENT

### Point I Kaufman abandoned his arguments concerning the application of collateral estoppel by failing to object to the magistrate judge's report and recommendation or by failing to raise them below.

"A party's failure to timely object to a magistrate judge's report and recommendation 'may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object.'" *King v. City of New York, Dep't of Corr.*, 419 F. App'x 25, 26-27 (2d Cir. 2011) (quoting *United States v. Male Juvenile (95–CR–1074)*, 121 F.3d 34, 38 (2d Cir. 1997)). The magistrate judge included language in her report and recommendation making clear that "[o]bjections to this report and recommendation must be filed . . . within fourteen (14) days of filing" and that a "[f]ailure to file objections within the specified time waives the right to appeal both before the

district court and appellate courts." (A. 63) (citations omitted). Because this language provides "the requisite 'express warning' of the consequences of the failure to file objections," *King*, 419 F. App'x at 27 (quoting *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 603 (2d Cir. 2008)), and Kaufman (through his attorneys) did not object to the report and recommendation, Kaufman's second argument (Br. 9.), that collateral estoppel is premature, is therefore waived for the purposes of appellate review here.[8] (A. 39) (rejecting Kaufman's prematurity argument and concluding that the "procedural posture of the criminal case does not and should not preclude application of collateral estoppel for purposes of this motion").

Kaufman's remaining arguments (Br. 9-10) were not made to the magistrate judge, and thus Kaufman could not object to any recommended ruling on that argument. Nevertheless, "arguments not presented to the district court are considered waived or forfeited and generally will not be considered for the first time on appeal." *United States v. Gomez*, 877 F.3d 76, 94-95 (2d Cir. 2017) (cleaned up). This is especially true "if those arguments were available to the

---

[8] Although waiver of an argument prohibits the party from raising it on appeal, *United States v. Graham*, 51 F.4th 67, 80 (2d Cir. 2022), this Court has observed that the type of waiver that occurs by failing to object to a magistrate judge's report and recommendation "is nonjurisdictional," and therefore the Court may "excuse the [waiver] in the interests of justice" in extraordinary cases. *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d Cir. 2000) (quoting *Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

parties and the parties proffer no reason for their failure to raise the issue." *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008). Kaufman's first argument, that the criminal case and this case are "factually and legally distinct," of course could have been made in the district court below but was not.

Kaufman's third argument is based on *Snyder v. United States*, 603 U.S. 1 (2024), an opinion issued on June 26, 2024. Although that date is five days after Kaufman's counsel served his opposition to summary judgment on the NCUAB, Kaufman's argument—that 18 U.S.C. § 215 criminalize bribes but not gratuities to bank officials—could have been made at any time, but was not made in this case until now. In Kaufman's second criminal appeal, when addressing this very same argument, that "Section 215 criminalizes only bribery and does not extend to corrupt gratuities . . . [,]" this Court declined to address the argument because "Kaufman did not raise this argument in his Rule 33 Motion [for a new trial] before the district court[.]" *Georgiton*, 2025 WL 1091253, at *3, n.1. This Court should decline to address the argument here as well.[9]

---

[9] Kaufman cites to *Dupree v. Younger*, 598 U.S. 729 (2023) (Br. 5), but the basis for that citation is far from clear. That case instructs that purely legal issues addressed at the summary-judgment stage, but not reargued in a motion for judgment notwithstanding the verdict, are still preserved for appeal. That case does not aid Kaufman as to arguments he failed to raise on summary judgment and says nothing contrary to the rule that arguments made to the magistrate judge must be addressed to the district court judge to be preserved for appeal.

Although Kaufman has raised the issue of the NCUAB's standing for the first time on appeal, because Article III standing is jurisdictional, this Court is permitted to examine any coherent standing argument. *See Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016). As discussed under Point IV, below, however, Kaufman fails to put forth a coherent argument with respect to standing, and there is no question that the NCUAB, as liquidating agent for Melrose, had standing to bring the breach of fiduciary duty claims against Kaufman.

**Point II Kaufman's challenges to the application of collateral estoppel are meritless and fail to show plain error.**

*The standard of review.*

As a general matter, summary judgment decisions are reviewed *de novo*. *Hilton v. Wright*, 673 F.3d 120, 126 (2d Cir. 2012). *De novo* review also generally applies to this Court's review of a district court's application of the elements of collateral estoppel. *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 80 (2d Cir. 2019). Because Kaufman failed to object to the magistrate judge's report and recommendation, however, this Court may only overturn summary judgment if "the magistrate judge committed plain error in ruling against [Kaufman]." *King*, 419 F. App'x at 27 (citing *Spence*, 219 F.3d at 174). Similarly, in reviewing his argument raised for the first time on appeal, "the Court has the power to notice a 'plain error' though it is not assigned or specified[.]" *United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Acct. L7N01967*, 731 F.3d

189, 195 (2d Cir. 2013) (citing *Silber v. United States*, 370 U.S. 717, 718 (1962)). Kaufman must therefore show a plain error of law or fact before this Court can disturb the decision below.

"'Plain error' is a doctrine that should only be invoked with extreme caution in the civil context." *Sum of $185,336.07 U.S. Currency*, 731 F.3d at 195 (citing *United States v. Carson*, 52 F.3d 1173, 1188 (2d Cir.1995)) (finding plain error in civil forfeiture proceeding where the district court applied the incorrect legal framework). The standard is "exacting" and permits correction of a district-court error only if the error was "clear or obvious," "affected the outcome of the district court proceedings[,]" and "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citing *United States v. Marcus*, 560 U.S. 258 (2010)). None of Kaufman's arguments suggest any error, let alone plain error.

The magistrate judge properly concluded that "Kaufman should . . . be estopped from disputing the issues decided in the underlying criminal conviction in this proceeding[]" under the case law of this Circuit.[10] (A. 35.) In reaching that conclusion, the magistrate judge analyzed the four factors necessary to establish collateral estoppel: "(1) the issues in both proceedings must be identical, (2) the

---

[10] The magistrate judge did not reach the issue of whether the criminal restitution also estopped Kaufman, opining that "[r]egardless of whether 18 U.S.C. § 3664(*l*) applies, Kaufman should still be estopped from disputing the issues decided in the underlying criminal conviction in this proceeding." (A. 35.)

issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits." (A. 36) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)). After thoroughly analyzing those factors, and the limited argument that Kaufman's attorneys made as to why the factors did not apply, the magistrate judge recommended the application of collateral estoppel. (A. 36-39.)

*The criminal case is final for purposes of collateral estoppel.*

Rather than addressing the magistrate judge's application of the factors in any detail, Kaufman focuses his attenuated briefing on issues that were or should have been raised in the criminal case and arguing positions contrary to black letter law. In his second argument, he rehashes his meritless contention that the application of collateral estoppel is premature. Specifically, he asserts that the "criminal conviction, which remains under collateral attack through a pending motion under 28 U.S.C. § 2255, cannot serve as a reliable basis for collateral estoppel."[11] (Br. 8.). But "the pendency of an appeal from a conviction does not deprive a judgment of its preclusive effect[.]" *S.E.C. v. Illarramendi*, 732 F. App'x

[11] Kaufman has not filed any motion in his criminal case as of the date of the filing of this brief.

10, 12 (2d Cir. 2018) (quoting *United States v. 303 W. 116th St., New York, New York*, 901 F.2d 288, 292 (2d Cir. 1990)). The magistrate judge therefore correctly found that Kaufman's second criminal appeal, which was still pending during the summary-judgment briefing, "does not and should not preclude application of collateral estoppel for purposes of this motion." (A. 39.)

This Court has recognized that "the same conclusion necessarily applies to a collateral challenge after affirmance of the conviction on appeal" through a motion under § 2255. *Illarramendi*, 732 F. App'x at 12. Kaufman's intended § 2255 motion therefore provides no reason to withhold the application of collateral estoppel. Instead, Kaufman's circumstances exemplify why collateral estoppel applies once the judgment is final. Otherwise, any time a party to a prior proceeding sought or intended to seek further review of a judgment, collateral estoppel would be inapplicable, thereby thwarting any possible repose to litigation that the doctrine could provide.

*Kaufman may not relitigate the criminal case here.*

In his third argument, and in various statements throughout his brief, Kaufman refers to concerns that should have been directed to the district court or the jury in his criminal case. He argues that the "criminal proceeding was marked by conflicting witness testimony, shifting prosecutorial narratives, and a late-stage pivot away from the indictment's original theory of bribery based on 'favorable

loans' to [Georgiton] toward a broader interpretation of the alleged bribery scheme, including a new emphasis on gratuities." (Br. 9.) Kaufman also claims that the "district court . . . retroactively interpreted lawful gratuities as unlawful conduct, contrary to *Snyder v. United States*, 603 U.S. 1 (2024 )."[12] (Br. 6.) Those arguments would all be proper (although wrong) if made in his criminal case (and the appeal therefrom). Indeed, in his criminal appeal, Kaufman argued that "the government's evidence at trial constructively amended, and prejudicially varied from, the indictment." *Kaufman*, 2023 WL 1871669, at *2. That and his other complaints concerning the criminal case are not properly made here, however.

The whole point of collateral estoppel is to "**preclude relitigation** of the [already-decided] issue in a suit on a different cause of action involving a party to the first case." *San Remo Hotel, L.P. v. City & Cnty. of San Francisco, Cal.*, 545 U.S. 323, 336, n.16 (2005) (emphasis added). Collateral estoppel "prevents relitigation of wrong decisions just as much as right ones." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 157-58 (2015). Otherwise, collateral estoppel could not further a policy of repose as it is designed to do. *See S.E.C. v. Monarch*

---

[12] Kaufman's use of the word "retroactive" is peculiar, as this Court has observed that "section 215 criminalizes not just agreeing to accept gratuities but also actually accepting gratuities[.]" *Kaufman*, 2023 WL 1871669, at *2. To the contrary, it is Kaufman who is asking for the retroactive application of *Snyder* to a statute somewhat similar to the statute addressed in *Snyder*.

*Funding Corp.*, 192 F.3d 295, 304 (2d Cir. 1999) ("[T]he occasional permanent encapsulation of a wrong result is a price worth paying to promote the worthy goals of ending disputes and avoiding repetitive litigation."). Accordingly, even assuming the criminal case suffered from the flaws that Kaufman suggests, this Court has no reason to disregard the criminal judgment if the magistrate judge properly applied the standard for collateral estoppel.

Notwithstanding collateral estoppel's application even if the prior judgment is outright wrong, courts employ certain safeguards to ensure that confidence in the accuracy of the prior judgment is warranted. First, the availability of "[a]ppellate review plays a central role in assuring the accuracy of [the] decision[]" on which collateral estoppel is based. *Gelb*, 798 F.2d at 44; *see Bravo-Fernandez v. United States*, 580 U.S. 5, 10 (2016) (similar). Kaufman appealed his criminal conviction to this Court twice, *see Kaufman*, 2023 WL 1871669 and *Georgiton*, 2025 WL 1091253. Many federal judges have considered and rejected Kaufman's arguments, leaving no doubt that the criminal case was properly decided. Second, to be certain "that the precluded issue was carefully considered in the first proceeding[,]" a subsequent court analyzes the four-factor test before applying collateral estoppel. *Gelb*, 798 F.2d at 44. The magistrate judge thoroughly analyzed the four collateral estoppel factors in her report and recommendation. (A. 33-39.)

Kaufman's vague questioning of the veracity of the criminal judgment fails to call into question the magistrate judge's analysis. He argues that the "district court applied collateral estoppel to preclude relitigating of issues that were neither clearly nor reliably adjudicated." (Br. 6.) Kaufman similarly states that he was subject to "a criminal conviction that lacked a clear and reliable adjudication of the relevant issues[.]" (Br. 5.) Mere conclusory sentences in a brief are not arguments this Court should consider. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005). Kaufman's vague complaints about the criminal case do nothing to impugn the magistrate judge's application of collateral estoppel, and his argument that the issues in the criminal case and this case were not identical fares no better.

*Kaufman's convictions under 18 U.S.C. § 215 establish breaches of his fiduciary duty to Melrose.*

Kaufman's sole argument addressed to the collateral estoppel factors is his contention that "the issues in the civil case differ materially from those in the criminal trial." (Br. 9.) Kaufman thus seems to be addressing the identicality standard, although he provides no further explanation in support. In not providing any details explaining how the issues were different, the argument is effectively abandoned. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). This Court therefore need not address it.

Regardless, Kaufman's overly general argument that the identicality standard for collateral estoppel is not satisfied is incorrect. Collateral estoppel's "identicality standard does not require either that the two cases have the same scope or that they involve the same causes of action." *Bifolck*, 936 F.3d at 82. Indeed, criminal convictions may bar the relitigation of issues decided in the criminal trial in a subsequent civil action. *See Gelb*, 798 F.2d at 43-44 (holding that convictions for wire fraud established civil insurance fraud). The identicality standard is met whenever "the issue decided in the prior proceeding is identical to the issue as to which preclusion is sought." *Bifolck*, 936 F.3d at 82. Kaufman's violations of 18 U.S.C. § 215 establish breaches of his fiduciary duty to Melrose.

As an officer of Melrose, Kaufman had fiduciary duties to Melrose and was "bound to exercise the utmost good faith and loyalty in the performance of his duties." *Phansalkar*, 344 F.3d at 200. As the magistrate judge observed, "[a] breach of fiduciary duty, and generally in tandem, of loyalty, occurs when a fiduciary commits an unfair, fraudulent, or wrongful act[.]" (A. 37) (quoting *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 227 (S.D.N.Y. 2013)). As relevant to Kaufman's conduct here, an "agent breache[s] his trust by accepting from the principal's customers, without the principal's knowledge, monies intended to influence the agent's actions concerning a matter affecting the principal's interest." *Brit. Am. & E. Co. v. Wirth Ltd.*, 592 F.2d 75, 79 (2d Cir. 1979); *see Carco Grp.,*

*Inc. v. Maconachy*, 383 F. App'x 73, 77 (2d Cir. 2010) ("[If] an employee . . . benefits his own interests at the expense of his employer, [the] conduct squarely [falls] within the definition of self-dealing.").

Kaufman was convicted of accepting criminal gratuities from Melrose vendors in violation of 18 U.S.C. § 215(a)(2). In order to convict Kaufman, the jury was required to find that he was (1) an officer of a financial institution, who (2) "solicited or demanded for the benefit of any person or accepted or agreed to accept something of value[,]" and did so (3) "corruptly and with the intent to be influenced or rewarded in connection with any business or transaction of that financial institution[,]" and that (4) "the thing of value solicited or accepted by the defendant had a value of greater than a thousand dollars." (A. 36-37; *see also United States v. Calk*, 87 F.4th 164, 180 (2d Cir. 2023) (explaining the elements of 18 U.S.C. § 215(a)(2)). In applying those instructions, the jury therefore necessarily found that Kaufman "corruptly and with the intent to be influenced or rewarded in connection with any business or transaction of [Melrose]" either solicited, demanded, accepted, and/or agreed to accept things with value of greater than a thousand dollars from both Georgiton and CBS Radio.

Overwhelming evidence presented at the criminal trial supported the jury's conclusions and shows that Kaufman accepted several different types of illegal gratuities in amounts of over $1,000 from Georgiton, and both solicited and

accepted gratuities that were illegal for him to accept in amounts of over $1,000 in the form of fully-paid luxury vacations from CBS Radio. *See generally Kaufman*, 2021 WL 4084523, at *2-8 (detailing evidence at criminal trial supporting Kaufman's two convictions). "Given that the jury found corrupt intent[]" in Kaufman's acceptance of those gratuities, the magistrate judge concluded that "there can be no serious dispute that the jury found that Kaufman had committed 'an unfair, fraudulent, or wrongful act.'" (A. 38.) Kaufman's corrupt acceptance of those illegal gratuities from Georgiton and CBS Radio in amounts of over $1,000 established a breach of his fiduciary duties to Melrose. Because the identicality standard is clearly met, and Kaufman has identified no valid reason why the application of collateral estoppel was improper, there is no plain error to justify overturning the district court judgment and the judgment below must be affirmed.

**Point III The undisputed summary-judgment record and Kaufman's admissions in his counter-statement of facts provide alternative bases to affirm summary judgment.**

In deciding an appeal, this Court is "entitled to affirm the district court on any ground for which there is support in the record[.]" *Adirondack Transit Lines, Inc. v. United Transp. Union, Loc. 1582*, 305 F.3d 82, 88 (2d Cir. 2002). In an appeal from summary judgment, this Court will affirm "if the record, viewed most favorably to the non-moving party, shows 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[.]'" *Illarramendi*,

732 F. App'x at 12 (quoting Fed. R. Civ. P. 56(a)). Where summary judgment was based on collateral estoppel from a criminal case, this Court may also affirm on the basis that the defendant's admissions establish a lack of dispute over material facts, especially when the district court found summary judgment appropriate on that alternative basis. *See id.* at 13.

*The Georgiton gratuities.*

On the Georgiton gratuities, the magistrate judge held that "even in the absence of [collateral] estoppel, there is no material fact in dispute as to whether Kaufman's acceptance of illegal gratuities from one of Melrose's largest borrowers breached his fiduciary duties to Melrose." (A. 42.) In support of that alternative holding, the magistrate judge identified "several key undisputed facts that support this conclusion[,]" which include Kaufman's receipt of rent-free lodging from Georgiton between 2010 and 2013, and Kaufman's subsequent purchase of that property "for the same amount Georgiton had paid for it in 2010[.]" (A. 42-43.) That purchase was "financed by a $200,000 cosigned loan secured by Georgiton's Melrose share account, and a $240,000 loan from Georgiton on which Kaufman has never made any payments." (A. 43.) Having fully examined the record, the magistrate judge found that the "facts, which were fully adjudicated in the criminal proceeding, and as to which Kaufman has not proffered any specific evidence that creates a genuine issue for trial, are sufficient to establish [NCUAB's] burden on

summary judgment as to . . . breach of fiduciary duty . . . based on the illegal gratuities provided by Georgiton." (A. 43.)

This conclusion was consistent with that of the district court in Kaufman's criminal case in deciding a motion for acquittal based on insufficient evidence. *See Kaufman*, 2021 WL 4084523, at *10 ("There was ample evidence from which a rational juror could have inferred that Kaufman accepted things of value from Georgiton with the improper intent to be rewarded for specific acts at Melrose."). In the criminal case, "Kaufman d[id] not dispute that he accepted lavish gifts from Georgiton or that he tried to hide their relationship and interactions in various ways[,]" but rather argued that he lacked "corrupt" intent. *Id.* at *11. Kaufman made those same admissions in this case in his counter-statement to the NCUAB's E.D.N.Y. Local Rule 56.1 Statement of Undisputed Material Facts, providing yet another basis to affirm summary judgment.

"Facts admitted" in that counterstatement, like facts admitted "in any pleading, are judicial admissions that bind the defendant throughout th[e] litigation." *Gibbs ex rel. Est. of Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006); *see United States v. GAF Corp.*, 928 F.2d 1253, 1259 (2d Cir. 1991) ("A pleading prepared by an attorney is an admission by one presumptively authorized to speak for his principal."). In his counter-statement, Kaufman admitted that he "lived at the [Georgiton] residence without paying rent,"

SOF ¶ 11, while signing Georgiton's name on checks for property expenses, SOF ¶ 12. (SA. 21-22.) To later purchase the property, Kaufman "took out a $200,000 shared secure loan from Melrose, which was cosigned by Georgiton," SOF ¶ 16, and "Georgiton made a personal loan to Kaufman in the amount of $240,000," SOF ¶ 17. (SA. 24-25.) Kaufman also admitted that he "did not disclose to other Board Members that he had obtained a personal loan from Georgiton," SOF ¶ 18. (SA. 25.) Kaufman's admissions in this very case thus independently establish his improper acceptance of gratuities from Georgiton and therefore a breach of fiduciary duty to Melrose as a matter of law.

*The CBS Radio gratuities.*

The magistrate judge observed that Kaufman "accepted the radio trip offers" and found no genuine dispute as to breach of fiduciary duty as to those gratuities. (A. 44, n.12.) Indeed, in his counter-statement, Kaufman admitted accepting vacation packages to places and events such as Paris, Hawaii, and the Super Bowl, and which included luxury hotel stays, airfare, dinners, activities, and excursions, SOF ¶¶ 21, 25. (SA. 26-27, 29.) Kaufman's sworn testimony was that the trips were taken with full knowledge of the Melrose Board of Directors, but even assuming that to be true, Melrose's established policies required Kaufman to obtain written approval from the board. (A. 44, n.12; *see Kaufman*, 2021 WL 4084523, at *16 ("[T]he receipt of [gifts made under a legitimate sales incentive

program] must be consistent with the policies of the officer's institution for them to be considered 'bona fide' or 'in the normal course of business.'")).

"[T]he Melrose Employee Handbook required that 'employees must decline or return any gift or gratuity valued in excess of $100 from any member, vendor, supplier, or other person doing business with Melrose Credit Union[.]'" (A. 17.) Similarly, Melrose's "Bank Bribery Policy . . . prohibited any Melrose official, with some exceptions, from 'soliciting' or 'accepting anything of value from anyone in connection with the business of [Melrose], either before or after a transaction is discussed or consummated.'" (A. 18.) Accordingly, the magistrate judge correctly found that "Kaufman has not identified any evidence that creates a genuine factual dispute as to whether Kaufman's solicitation and acceptance of paid trips from CBS Radio violated the Melrose Bank Bribery Policy and Employee Handbook." (A. 44; *see also Kaufman*, 2021 WL 4084523, at *17 ("There was ample evidence from which the jury was entitled to find that Kaufman's solicitation and acceptance of vacations, worth thousands of dollars—in direct contravention of Melrose's policy prohibiting its employees from accepting anything worth over $100 from Melrose's vendors—was neither in good faith nor in the normal course of Melrose's business.")). Because Kaufman's receipt of gratuities was outside of Melrose's policies, his acceptance of them was

in breach of his fiduciary duty to Melrose as a matter of law regardless of whether collateral estoppel also establishes such a breach.

**Point IV Kaufman's vague and undeveloped attack on the NCUAB's Article III standing as liquidating agent and legal successor to Melrose is without merit.**

Although a failure to raise a challenge to Article III standing in the district court is not fatal because the issue is jurisdictional, *see Strubel*, 842 F.3d at 187, Kaufman's argument concerning standing fails instead for lack of coherence. Like all appellants, "a litigant representing himself [on appeal] is obliged to set out 'identifiable arguments' in his principal brief." *Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016). Kaufman states that the "NCUA's role as liquidating agent introduces unresolved legal and factual issues regarding causation and liability that were not adequately addressed by the district court." (Br. 10.) A vague, general reference to some "unresolved" issues does not obligate this Court to undertake an exhaustive legal review of standing issues.

*Melrose suffered an injury in fact at the hands of Kaufman.*

Even if this Court does examine Article III standing, there is no doubt that the NCUAB, as liquidating agent for Melrose, had proper standing to bring the litigation below. Article III standing exists if a plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Kaufman's brief proposes the question of

"[w]hether the plaintiff had Article III standing, including a personal, concrete injury caused by the defendant, sufficient to survive dismissal under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). (Br. 10.) Kaufman thus appears to be arguing that the liquidating agent and/or Melrose did not suffer an injury in fact.

An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). Melrose undoubtedly suffered an injury in fact. First, "where parties have 'long been permitted to bring' the type of suit at issue, it is 'well nigh conclusive' that Article III standing exists." *Bulgari v. Bulgari*, No. 22 CIV. 5072 (LGS), 2025 WL 1558355, at *3 (S.D.N.Y. June 2, 2025) (quoting *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 274-75, 285 (2008)); *see Scanlan v. Eisenberg*, 669 F.3d 838, 845 (7th Cir. 2012) (citing *Sprint* for the same proposition). "[A] fiduciary's breach of their duty has well-established historical roots grounded in the common law." *Microbot Med., Inc. v. Mona*, No. 19 CIV. 3782 (GBD) (RWL), 2024 WL 964594, at *5 (S.D.N.Y. Mar. 5, 2024), *aff'd,* No. 24-559-CV, 2025 WL 262590 (2d Cir. Jan. 22, 2025). Melrose thus suffered an injury in fact regardless of whether it incurred actual damages from Kaufman's misconduct.

In any event, "'traditional tangible harms,' such as . . . monetary harms, 'readily qualify as concrete injuries under Article III.'" *Bohnak v. Marsh &*

*McLennan Companies, Inc.*, 79 F.4th 276, 284 (2d Cir. 2023). In reviewing the criminal restitution order, this Court affirmed the district court's determination that Kaufman had harmed Melrose. *See Kaufman*, 2023 WL 1871669, at *5 (finding "that the Melrose Ballroom naming-rights agreement had no value to Melrose[,] [that] . . . the actual loss amount was therefore $2 million . . . . [and that] Kaufman proximately caused the loss"). Melrose was also injured because an employer is harmed when a disloyal employee accepts benefits from an employer's clients on account of the employee's position because those benefits belong to the employer. *See Phansalkar*, 344 F.3d 184, 203 ("[A]n employee who . . . receives a benefit in connection with transactions conducted by him on behalf of his employer is under a duty to give such profit or benefit to his employer[.]"). There is no dispute that Kaufman received free vacations, free rent from Georgiton, a cash free loan, among other illegal gratuities, as discussed above, on account of his position with Melrose. The many significant monetary harms that Kaufman caused Melrose clearly establish Article III standing, assuming that the breach of fiduciary duty alone were insufficient to establish an injury in fact.

*The NCUAB has standing to litigate Melrose's claims.*

And the NCUAB as liquidating agent has Article III standing to assert Melrose's breach of fiduciary duty claims against Kaufman. The NCUAB Board is authorized by federal statute to act as a conservator of financially troubled credit

unions and as liquidating agent of failed credit unions. *See* 12 U.S.C. §§ 1786(h), 1787(b); *see Goldman, Sachs & Co.*, 775 F.3d 145, 147. Upon appointment as liquidating agent, the NCUAB succeeds by operation of law to "all rights, titles, powers, and privileges of the credit union . . . and the assets of the credit union." 12 U.S.C. § 1787(b)(2)(A)(i). The liquidating agent thereby "obtain[s] the rights 'of the insured [credit union]" that existed prior to receivership . . . . [including] the claims of the [credit union.]" *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 86 (1994);[13] *see Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir. 1979) ("[W]rongdoing by bank officers . . . creates a liability which is an asset of the bank[.]").

Standing in the shoes of the failed credit union, the NCUAB has Article III standing to bring a claim against a former officer who breached his fiduciary duty. *See Adato*, 599 F.2d at 1117 ("[W]rongdoing by bank officers that adversely affects all depositors creates a liability . . . and only the bank or its receiver may sue for its recovery."); *Nat'l Credit Union Admin. Bd. v. HSBC Bank USA, Nat. Ass'n*, 117 F. Supp. 3d 392, 398 (S.D.N.Y. 2015) ("Section 1787(b)(2) grants NCUA the authority to bring any claims that the credit unions would be entitled to bring."). Indeed, courts have historically found Article III standing for "receivers

---

[13] Interpretations of language in the Federal Deposit Insurance Act that is materially identical to the FCUA are applicable to the NCUA as liquidating agent. *See F.D.I.C. v. First Horizon Asset Sec., Inc.*, 821 F.3d 372, 374 (2d Cir. 2016).

to bring suit to benefit their receiverships[.]" *W.A. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 109-10 (2d Cir. 2008) (quoting *Sprint Commc'ns Co.,* 554 U.S. at 288); *see also Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) ("Under the Bankruptcy Code the trustee stands in the shoes of the bankrupt corporation and has standing to bring any suit that the bankrupt corporation could have instituted . . . .").

The NCUAB as liquidating agent is the functional equivalent of the historical receiver, as it is responsible for winding up the affairs of an insolvent entity. *See In re Libor-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 4634541, at *110 (S.D.N.Y. Aug. 4, 2015) ("[A] bank receivership is similar to a credit union liquidation."); *see also* 12 U.S.C. § 1787(j) ("[T]he term 'liquidating agent' includes a liquidating agent, receiver, conservator, commission, person, or other agency charged by law with the duty of winding up the affairs of a credit union."). Under its statutory authority to wind up the affairs of Melrose, the NCUAB had the ability to assert all claims that were held by Melrose, including its breach of fiduciary duty claims against Kaufman. The NCUAB's standing to seek relief for Kaufman's injuries to Melrose cannot be legitimately questioned.

## CONCLUSION

For the foregoing reasons, the NCUAB respectfully requests that the judgment on appeal be affirmed.

Dated: New York, New York
January 29, 2026

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: /s/Joshua Cash

Joshua Cash
Attorney for National Credit Union Administration Board
150 East 42nd Street
New York, New York 10017-5639
Our File: 22294.00006

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

I hereby certify this document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this document contains 8,855 words.

I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document was prepared in a proportionally spaced typeface using Microsoft Word, 14-point Times New Roman font.

Dated: New York, New York
January 29, 2026

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: /s/Joshua Cash
Joshua Cash
Attorney for National Credit Union
Administration Board
150 East 42nd Street
New York, New York 10017-5639
Our File: 22294.00006